UNITED STATES v. FREEL.

(Circuit Court of Appeals, Second Circuit. January 5, 1900.)

No. 78.

PRINCIPAL AND SURETY—RELEASE OF SURETY—ALTERATION OF CONTRACT.

Where a contract for the construction of a dry dock for the United States, "to be located at such place on the water line of the navy yard, Brooklyn, N. Y., as shall be designated by the party of the second part," had attached thereto and made a part thereof the plans and specifications for the dock, reserving the right to the United States to make changes in such plans and specifications, the difference in the contract price on account of any such changes to be determined as therein provided, and contained a further provision that "no change herein provided for shall in any manner affect the validity of this contract," a supplemental contract, changing the location of the entire dry dock from the water line, as fixed by the initial contract, to a point 64 feet inland, and requiring the contractor to make all necessary excavations and connections with the water at an increased payment of $5,000, and with an increased time for performance, was not within the terms of such provision, but was a change in substance of the contract, not contemplated thereby, which released the sureties on the contractor's bond, who did not assent thereto, from liability.

In Error to the Circuit Court of the United States for the Eastern District of New York.

George H. Pettitt, for plaintiff in error.

Howard A. Taylor and James R. Soley, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the plaintiff in the court below to review a judgment for the defendant, Freel, as executor of Edward J. Freel, entered upon a demurrer to the complaint. (C. C.) 92 Fed. 299. The action was brought to recover upon a bond executed to the plaintiff by Edward J. Freel as surety for one Gillies, whereby Freel, as such surety, undertook that Gillies would well and truly perform the stipulations of a contract of even date therewith. It was averred in the complaint that Gillies entered upon the performance of the contract, but thereafter failed and neglected to fulfill it, to the damage of the plaintiff.

The contract referred to in the bond, and bearing the same date, was executed by Gillies as party of the first part and the United States as party of the second part, and was one by which Gillies undertook to construct a dry dock for the United States at the price of ·$412,000. The contract contained, among others, the following clauses:

"First. The contractor will, within twenty days after he has been tendered the possession and the occupancy of the site by the party of the second part, commence, and within twenty-seven calendar months from such date construct and complete, ready to receive vessels, a timber dry dock, to be located at such place on the water line of the navy yard, Brooklyn, N. Y., as shall be designated by the party of the second part."

"Seventh. The construction of the said dry dock and its accessories and appurtenances herein contracted for shall conform in all respects to and with the plans and specifications aforesaid, which plans and specifications are hereto annexed, and shall be deemed and taken as forming a part of this contract, with the like operation and effect as if the same were incorporated herein. No omission of the plans or specifications of any detail, object, or provision necessary to carry this contract into full and complete effect in accordance with the true intent and meaning hereof shall operate to the disadvantage of the United States, but the same shall be satisfactorily supplied, performed, and observed by the contractor, and all claims for extra compensation by reason of or for or on account of such extra performance are hereby, and in consideration of the premises, expressly waived; and it is hereby further provided, and this contract is upon the express condition, that the said plans and specifications shall not be changed in any respect except upon the written order of the bureau of yards and docks; and that if at any time it shall be found advantageous or necessary to make any change, alteration, or modification in the aforesaid plans and specifications, such change, alteration, or modification must be agreed upon in writing by the parties to the contract, the agreement to set forth fully the reasons for such change, and the nature thereof, and the increased or diminished compensation, based upon the estimated actual cost thereof which the contractor shall receive, if any: provided, that whenever the said changes or alterations would increase or decrease the cost by a sum exceeding five hundred dollars ($500) the actual cost thereof shall be ascertained, estimated, and determined by a board of naval officers to be appointed by the secretary of the navy for the purpose, and the contractor shall be bound by the determination of said board, or a majority thereof, as to the amount of increased or diminished compensation he shall be entitled to receive in consequence of such change or changes: provided, further, that if any enlargement or increase of dimensions shall be ordered by the secretary of the navy during the construction of said dry dock, that the actual cost thereof shall be ascertained, estimated, and determined by a board of naval officers, to be appointed by the secretary of the navy, who shall revise said estimate, and determine the sum or sums to be paid the contractor for the additional work that may be required under this contract: and provided, also, that no further payment shall be made unless such supplemental or modified agreement shall have been signed before the obligation arising from such change or modification was incurred, and until after its approval by the party of the second part: and further provided, that no change herein provided for shall in any manner affect the validity of this contract."

June 16, 1893, a supplemental contract was entered into between Gillies and the United States to lengthen the dry dock from 600 feet, as called for in the specification, to 670 feet. It provided for additional compensation to the contractor of $45,556.

August 17, 1893, a second supplemental contract was entered into between Gillies and the United States. By this contract "the location of the dry dock now being constructed at the United States navy yard at Brooklyn, N. Y., under contract with the said John Gillies,

party of the first part," was changed, and Gillies stipulated to change its location to one 64 feet further inland "than that laid down and staked out when the said contract was entered into," and to perform all the additional excavation necessary, and supply all the labor and materials incident thereto. By this contract he was to be paid the sum of $5,063.83 as full compensation for the additional work and materials. Freel was not a party to either of the supplementary contracts.

The demurrer of the defendant was sustained in the court below upon the ground that Freel was discharged from his obligation as surety for the performance of the contract by the change introduced by the supplementary contract of August 17, 1893, whereby a new location for the dry dock was substituted for the contract location. The very careful and exhaustive opinion of the learned judge who decided the case in the court below renders unnecessary any extended discussion of the questions presented by this appeal.

By the first contract the site of the dry dock was to be on the water line, at some point to be thereafter designated. Its location was to that extent definitely fixed. It was the purpose and purport of the last agreement to change the original location, which was to be "at such a place on the water line" as might be designated by the United States, to a place not on the water line, but "sixty-four feet further inland." This change necessarily entailed an increased expense upon the contractor, as was recognized by the extra compensation allowed him in the agreement. That it altered the requirements of the first contract in matters of substance is self-evident.

The proposition is elementary that the obligation of a surety does not extend beyond the terms of his undertaking, and, when this undertaking is one to assure the performance of an existing contract, if any change is made in the requirements of such contract in matters of substance, without his assent, his liability is extinguished. This proposition is not controverted in the argument for the plaintiff in error, but the contention is that the change which was made in the requirements of the principal contract was within the contemplation of that contract, and therefore was sanctioned by the undertaking of the surety. If the provisions of the principal contract authorized such a change, undeniably the surety assented to it in advance. The case is reduced to the single question whether the principal contract did authorize the change. This inquiry depends upon the effect of the seventh clause. The most that can be claimed for that clause is that it permits the party of the second part to make any change, alteration, or modification "in the agreement, plans, and specifications," which are referred to as "annexed," and made a part of the contract, and provides that no such change shall in any manner affect the validity of the contract. Whether the clause warrants such a latitudinarian construction as to embrace the extensive departure from the plans and specifications provided for by the first supplemental contract, we do not determine. We are clear that it does not warrant the change made by the last supplemental contract, and, that being so, whether the first change was

authorized is a question which does not require decision. The plans and specifications mentioned in clause 7 are not set forth in the complaint, and we cannot doubt they would have been if they purported in the remotest degree to deal with the location of the site. The context shows, however, that the plans and specifications mentioned in the clause are those which relate to the construction of the building, its accessories and appurtenances.

The supplemental contract does not purport to make any change in the plans and specifications annexed to the original contract. It recites that the location had been "laid down and staked out" when that contract was entered into, and, if the location had been shown or referred to in the plans or specifications, that recital would have been unnecessary, and one referring to the plans would naturally have been inserted instead.

Undoubtedly it would have been within the contemplation of the original contract to change the location of the dry dock from the place originally laid down and staked out to any other place upon the water line of the navy yard which might have been thereafter designated by the United States. The terms of the contract would have warranted such a change, because they provide for the construction of a dry dock at such place on the water line of the navy yard "as shall be designated" by the United States. Such a change would not have required the "additional excavation necessary at the entrance" mentioned in the supplemental contract, and the very considerable incidental extra expense.

We agree with the court below that the alteration extinguished the liability of the surety. The demurrer was correctly decided, and the judgment is affirmed.