FIDELITY & DEPOSIT CO. OF MARYLAND v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 13, 1905.)

No. 179.

1. UNITED ·STATES—CONTRACTS—BREACH—BONDS—DISCHARGE OF SURETY.

Where a United States contractor agreed to remove stone belonging· to the United States stored on leased land on or before June 11, 1900, it was an implied condition of the contract that the government should keep its lease of the ground in force during such time, and its failure to do so, resulting in the owner's notifying the contractor to deliver immediate possession, and the commencement of dispossession proceedings against ·him, operated as a breach of the contract by the government, discharging the contractor's surety from liability on the contractpr's bond.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Surety, § 296.]

2. SAME—WAIVER. ·

Where the surety of a government contractor was discharged by the government's breach of contract operating to materially shorten the time for performance of the contract, the fact that the contractor thereafter resumed work and waived the government's breach was ineffectual as against such surety.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Surety, § 296.]

In Error to the Circuit Court of the United States for the Southern District of New York. ·

Jas. Russell Soley, for plaintiff in error.
· Henry A. Wise, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment for the plaintiff rendered upon the verdict of a jury.

The action was brought against the defendant as a surety upon a bond executed to the United States by one Conkling, as principal, conditioned for the faithful performance by Conkling of a contract entered into May 18, 1899, between Conkling and the United States. The contract provided that Conkling should remove "the stone owned by the United States, stored on the south side of the cut through Dyckman's Meadows," amounting to 235,000 cubic yards, more or less; that he should be paid therefor by the United States at the rate of .22 cents per cubic yard; that he should commence the removal of the stone on or before June 17, 1899, and that he should complete the removal on or before June 11, 1900. It also provided that, in case Conkling should, in the judgment of the engineer in charge for the United States, fail to prosecute faithfully and diligently the work, the government should be at liberty to annul the contract by giving notice to that effect to Conkling.

The following facts appeared upon the trial: The premises upon which the stone was at the date of the making of the con-

tract, which premises were known as "Dyckman's Meadows," had been leased by the United States from Dyckman for the purpose of depositing and storing the stone thereon for the term of one year expiring December 1, 1898. The lease was conditioned that the government should remove the stone at the expiration of the term. This lease was renewed for the further term expiring December 1, 1899. December 1, 1899, after Conkling had entered on the performance of his contract, the lessor served written notice upon him of the expiration of the term of the lease to the government, demanding the immediate possession of the premises, and requesting him to remove at once any property which he might have thereon. Conkling promptly informed the government of this notice, and requested instructions. Shortly thereafter dispossess proceedings were commenced by the lessor in one of the local courts against Conkling. In January the government intervened in this proceeding, and denied the jurisdiction of the court; and the proceeding was adjourned from time to time during the months of January and February. In the latter part of February the government obtained from the lessor a new lease of the premises for the term of one year beginning January 1, 1900. Until February 27th Conkling received no instructions from the government except those to the effect that the matter was under consideration, and he must resume work, but on that day he was notified that the United States had been authorized to enter upon the premises. The notification also contained this statement:

"I have therefore to request that you resume at once the work and remove the stone under your contract dated May 18, 1898, which was suspended by you without authority from this office. If work is not commenced promptly, and satisfactory progress is not made, it will be necessary to annul the contract and to proceed to the completion of the work as prescribed therein."

It further appeared that Conkling did not, after December 1, 1899, attempt to go on with the work of removing the stone, and on May 3, 1900, the government gave him written notice annulling the contract for noncompliance with its terms.

The only assignment of error which we deem it necessary to consider is that based upon the refusal of the court to order a verdict for the defendant. At the close of the evidence the defendant requested that such a verdict be directed upon the ground, among others, that there had been a breach of contract upon the part of the government in permitting the lease to lapse.

Upon the undisputed facts we are of the opinion that the trial judge should have directed a verdict as requested by the defendant, and that the defendant, as a surety, was discharged by the default of the government to remain in lawful possession of the demised premises during the period necessary to enable Conkling to fulfill his contract. The contract by necessary implication included an obligation on the part of the government to permit Conkling to remove the stone, and in this behalf to secure to him the privilege of access to the premises during the necessary period of his performance. It is quite immaterial that this understanding

was not expressed in the contract. The parties contracted on the basis of the continuing existence of this privilege, because otherwise the contract would have been incapable of performance by either. The law implies in all contracts that each party shall do those things which are indispensable precedent conditions to performance by the other party. "If one party undertakes to perform work which necessitates a great outlay of money, time, or trouble, and he is only to be paid by the measure of the work he has performed, the contract necessarily presupposes and implies on the part of the other party an obligation to supply the work." 2 Addison on Contracts, 1026. An adjudged case which is peculiarly apposite to the present is Murray v. Kansas City, 47 Mo. App. 105. In that case the plaintiff had entered into a contract with the city to construct a viaduct, the performance of which was prevented by an injunction procured by a third party upon the ground that the city had no right of way. In affirming a judgment in his favor against the city for damages the court said:

"The city had full authority under its organic law to secure the right of way, if not already acquired, and by its contract with Murray it impliedly agreed to secure a place for the structure. We know of no reason why the city could not contract for the construction of the viaduct in advance of securing the right of way for its location, just as a railroad company may contract for the grading of its roadbed before securing the entire right of way. We hold, then, that Kansas City made a binding contract with Murray, and that by such a contract the city undertook by implication to secure the right of way for the viaduct, and that said city failed to comply with such obligation, and became at the date of such perpetual injunction liable to plaintiff for damages by him thereby suffered."

By the law of New York, as at common law, the tenant who holds over after the expiration of his term without the permission of his landlord becomes a trespasser at the election of the landlord, and to entitle him to claim any rights either as a tenant at will or as a tenant at sufferance the holding over must be continued for such a length of time and under such circumstances as to authorize the implication of assent upon the part of the landlord. Commissioner of Pilots v. Clark, 33 N. Y. 251; Schuyler v. Smith, 51 N. Y. 309, 10 Am. Rep. 609; Smith v. Littlefield, 51 N. Y. 539; Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94, 28 Am. St. Rep. 636. By the failure of the government to renew the lease Conkling was interrupted in the performance of his contract for a period of three months, during which time he could only have entered upon the premises to remove the stone as a trespasser. It was not incumbent upon him to undertake performance in that capacity. Upon the facts as they appeared upon the trial, because the government had not performed upon its own part it was not entitled to recover against Conkling for nonperformance of the contract; consequently there was no right of recovery against the defendant as surety.

Some of the evidence upon the trial indicates that Conkling was anxious to throw up his contract, and had been assured by some of the subordinate officers of the government that the government would protect him if he would go on with the work.

The rights of the parties, however, do not depend upon Conkling's motives. It suffices that he had a right to avail himself of the situation which had been created by the default of the government. Even if he had chosen to waive that default, and, when the government procured the new lease, had resumed work under the contract, but had subsequently failed to fulfill, the interruption of three months caused by the act of the government was a variation of the contract which discharged the surety, and Conkling's waiver would have been ineffectual as against the defendant. Coughran v. Bigelow, 164 U. S. 301, 17 Sup. Ct. 117, 41 L. Ed. 442. This interruption, shortening to nine months the term for performing an undertaking which by the contract was to be performed within twelve months, effected a substantial deviation in the contract which the surety guarantied; and the rule is familiar that any material alteration or deviation from the terms of a contract for the performance of which a surety is bound, made by the parties without his consent, will release him from his obligation. United States v. Freel, 99 Fed. 237, 39 C. C. A. 491; Id., 186 U. S. 309, 22 Sup. Ct. 875, 46 L. Ed. 1177.

The judgment is reversed.