UNITED STATES v. FIDELITY & DEPOSIT CO. OF MARYLAND et al.

(Circuit Court of Appeals, Second Circuit. March 5, 1907.)

No. 59.

1. EVIDENCE—CONTRACTS—VARIATION BY PAROL EVIDENCE—IMPLIED CONDITIONS.

The rule that, where parties have deliberately put their engagements into writing, in such terms as to import a legal obligation, without any uncertainty as to the object or extent of such engagements, the writing is presumed to contain the entire contract, and all the prior and contemporaneous negotiations are merged therein, and cannot be shown by parol evidence to modify the terms of the writing, applies as well to its implied as to its expressed conditions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1756–1771.]

**2. SAME—ACTION FOR BREACH.**

The United States entered into a contract, by which the other party was to furnish and place in position, for the purposes of the construction of a breakwater, 88,000 tons more or less of riprap stone. The proposals on which the contract was let required bids to state the location of the quarry from which it was proposed to obtain the stone, and to be accompanied by a sample, and the contractor's bid stated that the quarry was located "at Spuyten Duyvil, New York." The contractor had previously purchased from the United States, and agreed to remove, a large quantity of stone which the government had deposited on leased premises at Spuyten Duyvil; but, before the riprap contract was completed, he was dispossessed and prevented from removing any more of such stone by reason of the failure of the government to renew its lease, and thereupon he abandoned the contract. *Held*, in an action against him and the surety on his bond for breach of the contract, that it could not be shown by the surety, as a defense, that it was understood by the parties that the stone to be used was that so purchased by the contractor, and that performance was prevented by the act or default of the government, which precluded its recovery, since the effect of such evidence would be to add a term to the written contract which did not specify such stone.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1756–1772.]

Coxe, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of New York.

Writ of error by the United States, plaintiff in the court below, to review a judgment for the defendant rendered upon a verdict by the direction of the court.

W. T. Dennison, Felix Frankfurter, and Henry L. Stimson, for the United States.

A. B. Boardman and O'Brien, Boardman, Platt & Dunning, for defendants in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The action was brought by the government to recover of the defendant, as surety for one Conkling, damages alleged to have been sustained by the breach by Conkling of his contract with the government. The defendant undertook that Conkling would perform and observe all and singular the agreements on his part contained in a written contract bearing date September 26, 1899, made by him with the government for furnishing, delivering, and placing in position, for the purposes of the construction of a breakwater, "88,000 tons, more or less, of riprap stone." The contract provided that Conkling should commence the work within 30 days from the time of the approval of the contract by the chief engineer of the United States army, and should complete the same on or before October 1, 1900, and, if he failed to prosecute the work faithfully and diligently, the government should be at liberty to annul the contract by giving notice to that effect, and should be entitled to retain as its own all money due or to become due under the contract. It also provided that Conkling should be paid 51 cents per ton for the stone when placed in position; "payments to be made monthly, when the work contracted for shall have been delivered and accepted." The

contract refers to annexed specifications as forming a part of it. The specifications contained this provision:

"Bidders will state in their proposals the location of the quarries from which it is proposed to obtain the stone. These statements in the accepted proposals will constitute a part of the contract. A sample of the stone to be used will be submitted with the proposal as a standard for comparison."

Conkling's proposal stated:

"The quarry from which I propose to obtain the stone, sample submitted, is located at Spuyten Duyvil, New York."

The contract was approved October 14, 1899, and about the 1st of November following Conkling commenced delivering the stone. During November he delivered and placed in position 3,362 tons of the stone. The work had been reported by the inspector in charge, but had not been formally accepted or rejected by the engineer in charge, when Conkling temporarily suspended work. This occurred on or about November 27th. In the previous May, Conkling had entered into a contract with the government to purchase and remove a large deposit of stone belonging to the government, located upon premises at Spuyten Duyvil, which the government had leased from one Dykeman, and by which contract Conkling was to have until June 17, 1900, to remove the stone. Owing to the neglect of the government to obtain an extension of the lease, the government's right of possession to the premises expired December 1, 1899, and thereupon the owner of the premises commenced proceedings to dispossess the government, and notified Conkling that he must not enter upon the premises to remove the stone. December 8th Conkling was notified to resume work without delay. He did not resume, alleging as a reason that, because of the neglect of the government to procure an extension of the lease, he was prevented from obtaining the stone. The government did not obtain an extension of the lease for several months, and in the meantime notified Conkling, after repeated requests to Conkling to resume the work, that his contract was annulled. Conkling was never paid for his work; but, so far as appears, he never requested an estimate thereof or payment therefor. The increased cost incurred by the government on completing the work covered by Conkling's contract was about $2,500.

Upon the trial the court directed a verdict for the defendant upon the ground that the government by its acts had made it impossible for Conkling to perform the contract, and the defendant as surety was thereby released.

The only question that requires consideration is whether it was competent for the defendant to show by extraneous evidence that the "88,000 tons, more or less, of riprap stone," mentioned in the contract, was according to the contemplation of the parties thereto the stone which Conkling was to procure from the leased premises at Spuyten Duyvil. If the contract was in effect one to furnish and deliver that stone, the government by its own act prevented Conkling from performing his contract, as we held in a former controversy between the present parties (137 Fed. 866, 70 C. C. A. 204). Speaking of the May contract, we said:

That contract, "by necessary implication, included an obligation on the part of the government to permit Conkling to remove the stone, and in this behalf to secure to him the privilege of access to the premises during the necessary period of his performance."

If, however, the contract permitted Conkling to furnish any rip-rap stone of the quality and dimensions specified, or like the sample accompanying his bid, it is quite immaterial that he may have been prevented by the government from furnishing the particular stone which he had in contemplation. The rule is elementary that, where the parties have deliberately put their engagements into writing in such terms as to import a legal obligation, without any uncertainty as to the object or extent of such engagements, the writing is presumed to contain the entire contract, and all the prior and contemporaneous negotiations are merged therein, and cannot be shown by parol evidence. The writing, it is true, may be read by the light of surrounding circumstances in order more perfectly to understand the intent and meaning of the parties; but, as they have constituted it to be the only and final expression of their meaning, no words can be added to it, or others substituted in place of words it already contains. The rule which precludes a resort to parol evidence to modify the terms of a written contract in particulars, in respect to which its language is unequivocal, applies as well to the implied as to the expressed conditions. Indeed, that which is a part by implication is as much a part of the contract as though it had been fully expressed in its words. These familiar rules control the present question. The contract was unambiguous, and the court below erred in making a contract between the parties by parol evidence which obligated Conkling to furnish the particular stone which he had contracted to purchase from the government, instead of any other stone which might be of the quality of the sample submitted with his bid coming from the locality of Spuyten Duyvil.

We have not overlooked the case of United States v. Peck, 102 U. S. 64, 26 L. Ed. 46, which is relied upon as an authority in point by the defendants in error. That was a case in which the claimant had entered into a contract with the government to furnish and deliver a certain quantity of hay on or before a specified day, and the contract made no mention of the source from which it was to be obtained, and the question was whether it was competent for him to show by the surrounding facts that the hay within the contemplation of the contracting parties was to be procured at the Big Meadows, a place under the control of the government. The court decided that the evidence was competent, and that, because the government had deprived the claimant from obtaining the hay from that place, the latter was not liable for a breach of the contract in failing to deliver it. That case was peculiar in the fact that both of the contracting parties knew, at the time of entering into the contract, that the only hay which could possibly be supplied in fulfillment of the contract was that which could be obtained from the particular place. If it encroaches upon the rules to which we have adverted, its authority ought not to be extended to cases in which the facts are not practically identical.

The judgment is reversed.

COXE, Circuit Judge (dissenting). I think the judgment should be affirmed upon the authority of United States v. Peck, 102 U. S. 64, 26 L. Ed. 46, which cannot be distinguished from the case at bar upon any rational theory. In one case the contract related to hay and in the other to stone, but the only material variation favors the contention of the defendant in error, for in the Peck Case the contract made no mention of the source from which the contractor was to secure the hay. In the case at bar, on the contrary, the contract expressly states that the quarry from which the riprap stone is to be furnished is located at Spuyten Duyvil and it is admitted that the United States, through its duly authorized agent, knew that this statement related to the pile of stone on Dyckman Meadow.

This court decided (137 Fed. 866, 70 C. C. A. 204) that the United States by its conduct in permitting its lease to expire prevented the defendant in error from using the stone from this pile.

It is only necessary to substitute the word "stone" for the word "hay" in Mr. Justice Bradley's opinion to demonstrate the exact similarity of the two cases, as follows:

"The supply of stone which he (the contractor) depended on, and which under the circumstances he had a right to depend on, was taken away by the defendants themselves. In other words, the defendants prevented and hindered the claimant from performing his part of the contract. * * *

"It is a sound principle that he who prevents a thing being done shall not avail himself of the nonperformance he has occasioned."