# UNITED STATES *v.* FREEL.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 224. Argued April 17, 1902.—Decided June 2, 1902.

A surety on a contractor's bond, conditioned for the performance of a contract to construct a dry dock, is released by subsequent changes in the work, made by the principals without his consent.

The obligation of a surety does not extend beyond the terms of his undertaking, and when this undertaking is to secure the performance of an existing contract, if any change is made in the requirements of such contract in matters of substance without his consent, his liability is extinguished.

If the government's pleader had evidence of facts showing such knowledge and consent, he should have asked leave to amend the declaration by adding the averment necessary to state it.

THE case is stated in the opinion of the court.

*Mr. James Russell Soley* for Freel.

*Mr. George Hines Gorman* for the United States.

MR. JUSTICE SHIRAS delivered the opinion of the court.

In September, 1898, the United States of America brought an action in the Circuit Court of the United States for the Eastern District of New York against John Gillies, Henry Hamilton and Hugh McRoberts, Catharine Freel, Edward J. Freel and Frank J. Freel, as executors of Edward Freel, deceased.

The complaint alleged that theretofore, and on the 17th of November, 1892, the defendant John Gillies entered into a contract in writing with the plaintiff to construct a timber dry dock, to be located at the United States Navy Yard, Brooklyn, New York, according to certain plans and specifications attached to and made part of said contract; that on said 17th of November, 1892, the said John Gillies, as principal, and Henry

Hamilton and Hugh McRoberts, and Edward Freel, as sure-
ties, executed their joint and several bond to the United States
in the penal sum of $120,600, conditioned for the faithful per-
formance by the said Gillies of his contract to construct said
dry dock; that Gillies entered upon the performance of said
contract; that subsequently, on June 16, 1893, Gillies and the
United States agreed in writing to change and modify the
plans and specifications so as to increase the length of said dry
dock from six hundred to six hundred and seventy feet; that
on August 17, 1893, Gillies and the United States further
agreed in writing to change and modify the contract in cer-
tain particulars; that Gillies proceeded with the work under
said original and supplemental contracts so slowly, negligently
and unsatisfactorily that the Secretary of the Navy, under the
option and right reserved to him by the said contract, declared
the said contract forfeited on the part of said Gillies; that
thereupon, by a board duly appointed, the market value of the
work done and of the materials on hand was appraised at the sum
of $170,175.40; that thereafter, under the provisions of said
contract, the Secretary of the Navy proceeded to complete
said dry dock and appurtenances in accordance with the said
contracts, plans and specifications, at a cost to the United States
of the sum of $370,000; that the sum of $72,414.16 represented
the damages sustained by the plaintiff by reason of said Gillies'
breach of contract; that Edward Freel died on the 24th day
of December, 1896, leaving a last will appointing Catharine
Freel, Edward J. Freel and Frank J. Freel executors thereof;
that the said defendant John Gillies neglected and refused to
perform the terms and conditions of said contract on his part,
and that the plaintiff has performed, fully and completely, all
the terms and conditions of said contract on its part. Where-
fore the plaintiff demanded judgment against the said defend-
ants in the said sum of $72,414.16 with interest from April 1,
1897.

On November 26, 1898, Edward J. Freel, as executor of
Edward Freel, deceased, appeared and demurred to the com-
plaint upon the ground that it appeared upon the face thereof
that said complaint did not state facts sufficient to constitute a

cause of action. On May 24, 1899, after hearing the counsel of the respective parties, the Circuit Court sustained the demurrer, and dismissed the complaint as to said Edward J. Freel as executor. 92 Fed. Rep. 299. The case was taken to the Circuit Court of Appeals for the Second Circuit, and on January 5, 1900, that court affirmed the judgment of the Circuit Court. 99 Fed. Rep. 237. On December 22, 1900, a writ of error was allowed, and the cause was brought to this court.

The question in this case is whether a surety on a contractor's bond, conditioned for performance of a contract to construct a dry dock, was released by subsequent changes in the work made by the principals without his consent.

As the question is presented to us on a general demurrer to the complaint, it is necessary to set forth, with some particularity, portions of the original and of the supplemental contracts, which form parts of the complaint.

The original contract, dated November 17, 1892, contained, after alleging that proposals had been made and accepted for the construction by contract of a timber dry dock, to be located at the United States Navy Yard, Brooklyn, New York, the following provisions:

" First. The contractor will, within twenty days after he shall have been tendered the possession and occupancy of the site by the party of the second part, which possession and occupancy of the said site during the period of construction and until the completion and delivery of the work hereinafter mentioned, shall be secured to, the contractor by the party of the second part, commence, and within twenty-seven calendar months from such date, construct and complete, ready to receive vessels, a timber dry dock, to be located at such place on the water line of the navy yard, Brooklyn, N. Y., as shall be designated by the party of the second part."

\*       \*       \*       \*       \*       \*       \*       \*

" Seventh. The construction of said dry dock and its accessories and appurtenances herein contracted for shall conform in all respects to and with the plans and specifications aforesaid, which plans and specifications are hereto annexed and shall be deemed and taken as forming a part of this contract

with the like operation and effect as if the same were incorporated herein. No omission in the plans or specifications of any detail, object or provision necessary to carry this contract into full and complete effect, in accordance with the true intent and meaning hereof, shall operate to the disadvantage of the United States, but the same shall be satisfactorily supplied, performed and observed by the contractor, and all claims for extra compensation by reason of or for or on account of such extra performance are hereby, and in consideration of the premises, expressly waived; and it is hereby further provided, and this contract is upon the express condition, that the said plans and specifications shall not be changed in any respect except upon the written order of the Bureau of Yards and Docks; and that if at any time it shall be found advantageous or necessary to make any change, alteration or modification in the aforesaid plans and specifications, such change, alteration or modification must be agreed upon in writing by the parties to the contract, the agreement to set forth fully the reasons for such change, and the nature thereof, and the increased or diminished compensation, based upon the estimated actual cost thereof, which the contractor shall receive, if any: *Provided,* That whenever the said changes or alterations would increase or decrease the cost by a sum exceeding five hundred dollars.($500) the actual cost thereof shall be ascertained, estimated and determined by a board of naval officers to be appointed by the Secretary of the Navy for the purpose; and the contractor shall be bound by the determination of said board, or a majority thereof, as to the amount of increased or diminished compensation he shall be entitled to receive in consequence of such change or changes: *Provided further,* That if any enlargement or increase of dimensions shall be ordered by the Secretary of the Navy during the construction of said dry dock, that the actual cost thereof shall be ascertained, estimated and determined by a board of naval officers, to be appointed by the Secretary of the Navy, who shall revise said estimate and determine the sum or sums to be paid the contractor for the additional work that may be required under this contract: *And provided also,* That no further payment shall be made unless such supplemental or modi-

fied agreement shall have been signed before the obligation arising from such change or modification was incurred and until after its approval by the party of the second part: *And further provided*, That no change herein provided for shall in any manner affect the validity of this contract."

The supplemental contract of June 16, 1893, contained, among other things, the following:

"This agreement, entered into this 16th day of June, 1893, between John Gillies, contractor, for the construction of a dry dock at the U. S. Navy Yard, Brooklyn, New York, party of the first part, and Norman H. Farquhar, Chief of the Bureau of Yards and Docks of the Navy Department, for and in behalf of the United States, party of the second part,

"Witnesseth: That, whereas, the Navy Department has decided to lengthen the said dry dock from six hundred (600) feet, as called for in the specifications forming a part of the contract for the construction of a dry dock at the above-mentioned location, entered into by the above-mentioned parties of the first and second parts on the 17th of November, 1892, to six hundred and seventy (670) feet from the outer gate sill to the coping at the head of the dock.

"And, whereas, a board of naval officers, consisting of Captain J. N. Miller, U. S. N., Civil Engineer P. C. Asserson, U. S. N., and Civil Engineer, F. C. Prindle, U. S. N., was ordered by, and did convene, by order of the Secretary of the Navy, in compliance with the requirements of paragraph 7, page 2, of the contract, to fix this additional compensation to be allowed to said party of the first part for the additional labor and material required for said extension.

"And, whereas, said board of naval officers, after careful and mature deliberation, did fix the additional compensation to be paid said party of the first part for the said extension of the said dry dock at forty-five thousand five hundred and fifty-six ($45,556) dollars, and did allow an extension of three (3) months' time on account of said extension of said dry dock:

"Now, therefore, the party of the first part does hereby agree to extend the said dry dock to a length of six hundred and seventy (670) feet, measuring from the outer gate sill to

the coping at the head of the dock, in the same manner and under the same conditions as though said extension had been included in the original contract.

" And it is further agreed by the party of the first part to accept from the United States, as a just compensation for said work of extension, the sum of forty-five thousand five hundred and fifty-six ($45,556) dollars, in full therefor, payment to be made under the same conditions and requirements as exacted by the original contract.

" And it is further agreed by the party of the second part that, in full and just compensation to the party of the first part, the sum of forty-five thousand five hundred and fifty-six ($45,556) dollars shall be paid for the additional labor and material necessary to extend the said dry dock, as heretofore agreed to, payments to be made under the same conditions and requirements as exacted in the original contract.

" And it is therefore agreed that the time fixed in the original contract for the completion of the said dry dock shall be extended three (3) months, on account of the extra labor necessary to carry out the extension of the said dry dock as called for by this agreement."

The supplemental contract of August 17, 1893, contained the following :

" This agreement, made and concluded this seventeenth day of August, A. D. 1893, by and between John Gillies, of the city of Brooklyn, in the State of New York, party of the first part, and the United States, represented by N. H. Farquhar, U. S. Navy, Chief of the Bureau of Yards and Docks, Navy Department, acting under the direction of the Secretary of the Navy, party of the second part,

" Witnesseth : That whereas it has been deemed desirable to change the location of the dry dock now being constructed at the U. S. Navy Yard at Brooklyn, New York, under contract with the said John Gillies, party of the first part, dated November 17th, A. D. 1892 :

" Now, therefore, this agreement witnesseth that in consideration of the premises and for and in consideration of the payment to be made as hereinafter provided for, the party of the

first part, for himself, his heirs and assigns, and his legal and personal representatives, agrees to and with the United States that he will, in the construction of the said dry dock, change its location to one sixty-four (164) feet further inland than that laid down and staked out when the said contract was entered into, and that he will perform all the additional excavation necessary at the entrance of the dry dock in consequence of the said change of location; also all the additional work necessary to lengthen the suction pipes provided to be laid from the present pump house, including the piping, round piles, sheet piles, timber, iron work, excavation and back filling, etc., and all other work incident to said change of location, supplying all the labor and materials therefor.

" And this agreement further witnesseth that the United States, party of the second part, in consideration of the stipulations, agrees that for the faithful performance of this agreement by the party of the first part there shall be paid to the said party of the first part the sum of five thousand and sixty-three dollars and eighteen cents ($5063.18), United States currency, as full compensation. Said payment to be made in accordance with all the terms and conditions of payments as provided in the said contract and specifications.

" And the United States further agrees that the time limited by the said contract for the completion of the dry dock shall be extended for a period of eight (8) weeks on account of the said change in the position of the dry dock.

" It is also agreed that the provisions and conditions contained in the said contract and the specifications thereto attached, in regard to the character and quality of the materials and workmanship, shall apply to the work as herein modified.

" This agreement is made under the provisions of and in accordance with article 'seventh' of the said contract."

Before addressing ourselves directly to the question before us, it may be well to briefly examine some of the decisions of this court on the subject of the alteration of contracts without the assent of the surety.

*Miller* v. *Stewart*, 9 Wheat. 680, was an action on a bond conditioned for the faithful performance of the duties of the office

of deputy collector of direct taxes for eight certain townships in the fifth collection district of New Jersey, and it appeared that the instrument of the appointment, referred to in the bond, was afterwards altered, so as to extend to another township, without the consent of the sureties. It was *held* that the surety was discharged from his responsibility for moneys subsequently collected by his principal, the court saying, per Mr. Justice Story: " That the liability of a surety is not to be extended by implication, beyond the terms of his contract; that his undertaking is to receive a strict interpretation, and not to extend beyond the fair scope of its terms; and that the whole series of authorities proceeded upon this ground." *Miller* v. *Stewart* was followed and approved in *Leggett* v. *Humphrey*, 21 How. 76; *Smith* v. *United States*, 2 Wall. 219.

In *United States* v. *Bocker*, 21 Wall. 652, in the case of a distiller's bond, which recited that the person is about to be the distiller at one place, to wit, at the corner of Hudson street and East avenue, situated in the town of Canton, it was held that his sureties were not liable for taxes in respect of business carried on by him at another place, to wit, at the corner of Hudson and Third streets in the same town, even though he had no distillery whatever at the first named place.

However, the proposition that the obligation of a surety does not extend beyond the terms of his undertaking, and that when this undertaking is to assure the performance of an existing contract, if any change is made in the requirements of such contract in matters of substance without his consent, his liability is extinguished, is so elementary that we need not cite the numerous cases in England and in the state and Federal courts establishing it. Many of these cases will be found cited in the opinion of Thomas, J., in this case. 92 Fed. Rep. 299.

At the trial in the Circuit Court, it was contended, on behalf of the surety, that this proposition was applicable, and exonerated him by reason of the changes made in the original contract by the supplemental contracts of June 16 and August 17, 1893. It was claimed on behalf of the United States that the changes made in the original contract by the supplemental agreements were within contemplation of that contract, and

must be deemed to have been assented to in advance by the surety.

It was held by the learned trial judge, that the government's position was well taken in respect to the supplemental agreement of June 16, 1893, which he regarded as fairly within the meaning of the provisions in the seventh section of the contract, which refers to and provides for changes, alterations or modifications in the plans and specifications, and, therefore, within the undertaking of the surety. But his view was otherwise in respect to the alterations made by the supplemental contract of August 17, which, as respects the change of the site of the dock and the extension of the time of completion of the contract, he held to be changes not within the scope of the seventh section, but to be such as to exonerate the surety from liability for the subsequent dereliction of his principal.

We agree with the Circuit Court of Appeals in thinking that if the learned judge's opinion was sound in respect to the agreement of August 17, 1893, it is not necessary to determine whether the seventh section warranted so wide a departure from the plans and specifications of the original contract as was made by the agreement of June 16, 1893.

Coming, then, to the question of the effect on the responsibility of the surety of the supplemental agreement of August 17, we agree with the Circuit Court and the Circuit Court of Appeals in holding that the alterations thereby caused were beyond the terms of the undertaking of the surety, and extinguished his liability. The seventh section had in view such changes as might be found advantageous or necessary in the plans and specifications. But the changes called for by the new agreement had no reference to the original plans and specifications, but changed the location of the dry dock, requiring the contractor to make additional excavations and connections with the water, at an increased expense, and gave an increased time of performance.

A few cases, illustrating the principles involved, may be properly cited, and reference is made to the opinion of the Circuit Court, in which many more are cited.

In *Mundy* v. *Stevens*, 61 Fed. Rep. 77, it was held by the

Circuit Court of Appeals of the Third Circuit that sureties for the payment by a contractor to a sub-contractor of all moneys received for work under a government contract as provided in the contract were released by an alteration of such agreement whereby the right secured to the original contractors to deduct from the monthly payments three cents per yard for material dredged, subsequently was modified so that payments of two and a half cents per cubic yard should be made monthly; and it was also held that, as the plaintiff had set forth the supplementary agreement in his statement of claim, he thereby made it part of his case, and the burden of proof that the change was consented to by the sureties was upon the plaintiff.

*Rowan* v. *Sharpe's Rifle Man. Co.*, 33 Conn. 1, is an important case. There it was held by the Supreme Court of Connecticut that where a contract provided that the guns contracted for should be made " with all possible dispatch," and a supplemental contract, made before performance, provided that three hundred guns per week should be delivered for a certain period, and six hundred per week afterwards, the surety was discharged, the court saying: " But it appears to us very clear that a contract to manufacture and deliver a large quantity of any description of goods in a reasonable time, and a contract to manufacture and deliver the same quantity either at a specified time for the whole or a specific quantity from time to time, monthly or weekly, as the case may be, are materially variant."

The Supreme Court of Indiana, in *Zimmerman* v. *Judah*, 13 Ind. 286, held that a supplementary agreement to put an additional story on a house released the surety for the contractor in the original contract.

*Whitcher* v. *Hall*, 5 B. & C. 269, is cited in the opinion of the Circuit Court. There it was held by the Court of King's Bench that a surety engaged for another to the plaintiff for the milking of thirty cows, at a given price each per annum, was released by a subsequent agreement without his consent, whereby the hirer was to have twenty-eight cows for one half the year and thirty-two for the remainder.

A further contention is made in the government's brief that, even if such substantial changes were made in the contract as would release the surety if made without his assent, the fact of such changes should have been set up by the defendant as an affirmative defence by answer or plea, and not by demurrer.

The declaration set out, by attaching them as exhibits, the original and the two supplemental contracts, and it alleged that the changes effected by the latter were made "pursuant to, and in conformity with, paragraph 'seventh' of the first contract." If, upon the face of the agreement of August 17, 1893, it appeared that substantial changes were made in the location of the proposed structure, requiring additional excavations and connections at an increased expense, and extending the time limited by the contract for the completion of the dry dock for a period of eight weeks, on account of the change in the position of the dry dock, and if, as is conceded by this objection, such substantial changes in the location, cost and time necessary for the completion of the work operated to release the surety if made without his knowledge and consent, then the declaration put the plaintiff out of court, so far as the defendant surety was concerned, unless it was averred that the latter had knowledge of the changes and consented thereto. If the government's pleader had evidence of facts showing such knowledge and consent, and was surprised by the action of the trial judge in sustaining the demurrer, it was open to him to ask leave to amend the declaration by adding the necessary averment. This was not done, and we think it is too late to urge this objection in this court.

The judgment of the Circuit Court of Appeals is

*Affirmed.*

Mr. Justice Gray took no part in the disposition of this case.