## UNITED STATES FIDELITY & GUARANTY CO. OF BALTIMORE, MD., v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. March 22, 1912.)

### No. 1,982.

PRINCIPAL AND SURETY (§ 100*)—BUILDING CONTRACTS—DISCHARGE OF SURETY.

The surety on a federal building contractor's bond was discharged from liability by the government taking possession of the work on the contractor's default and making a substantially different contract with a third person, though the original contract authorized the government to make changes in the work.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 162–165; Dec. Dig. § 100.*

Discharge of surety on building contract by change in obligation or duty of principal, see note to United States v. Walsh, 52 C. C. A. 427.]

Gilbert, Circuit Judge, dissenting.

Upon Writ of Error to the Circuit Court of the United States for the Southern District of California, Southern Division.

Action by the United States of America against the United States Fidelity & Guaranty Company of Baltimore, Md. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

The question in this case is whether the surety on a contractor's bond, conditioned for his performance of a contract for the erection of a stone mess-hall and kitchen at the Rice Station Indian School, in the then territory of Arizona, was released by occurrences happening subsequent to the entering by the contractor upon the performance of the contract.

By the contract the contractor, who was one Augustus W. Boggs, agreed to furnish all the labor and materials and to do and perform all of the work required to construct and complete the buildings mentioned in accordance with certain plans, drawings, and specifications annexed to and made a part of the contract. It was agreed that the entire work should be completed and turned over to the government on or before September 1, 1905, and that, in the event of the contractor's failure or refusal so to do, $20 a day should be deducted from the contract price for each and every day the completion and delivery of the buildings should be delayed beyond the stipulated time. The government reserved the right to at any time make "changes, alterations, or omissions from or additions to the work and materials herein provided for, the valuation of such work and materials if not agreed upon, to be determined on the basis of the contract unit of value of material and work referred to, or, in the absence of such unit of value, on prevailing market rates, which market rates, in the case of dispute, are to be determined by" the Commissioner of Indian Affairs, whose decision was made binding upon both parties. The contract further provided that no claim for damages on account of such changes or for anticipated profits should be made or allowed, and that the contractor should not be allowed any additional compensation for labor or material "unless he receives written authority from the Commissioner of Indian Affairs, and the price agreed upon before execution of the work; that no addition to or omission from the work herein specifically

provided for shall make void or affect the other provisions or covenants of this contract, but the difference in the cost thereby occasioned, as the case may be, shall be added to or deducted from the amount of the contract; and that in the absence of any express agreement or provision to the contrary, no addition to or omission from the work herein specifically provided for shall be construed to extend the time fixed herein for the fir al completion of the work."

The agreement further provided that if the contractor should fail to complete the work or any part thereof in accordance with the contract and within the stipulated time, or should fail to prosecute the work with such diligence as in the judgment of the government would insure its completion within the stipulated time, the government might withhold all payments for work in place until the final completion and acceptance of the work, and "is authorized and empowered, after eight days' notice thereof, in writing, to the party of the second part, and the said party of the second part having failed to take such action within the said eight days as will, in the judgment of the party of the first part, remedy the default for which said notice was given, to take possession of the said work in whole or in part and of all machinery and tools employed thereon and all materials belonging to the said party of the second part delivered on the site, and, at the expense of said party of the second part, to complete or have completed the said work, and to supply or have supplied the labor, materials, and tools of whatever character necessary to be purchased or supplied by reason of the default of the said party of the second part; in which event the said party of the second part and his sureties on the bond to be given for the faithful performance of this agreement shall be further liable for any damages incurred through such default and any and all other breaches of this contract."

The contract further provided that the government should pay the contractor, "on the presentation of proper receipts or vouchers in duplicate to the Commissioner of Indian Affairs, the sum of twelve thousand seven hundred nine no-100 ($12,709.00) dollars, in lawful money of the United States, in consideration of the herein recited covenants and agreements made by the party of the second part, as follows: Eighty (80) per centum of the value of the work executed and actually in place to the satisfaction of the party of the first part at the expiration of each thirty (30) days during the progress of the work, the amount of each payment to be computed upon the actual amount of labor and materials expended during the said period of thirty (30) days for which partial payment is to be made (the said value to be ascertained by the party of the first part); and the balance thereof will be retained until the completion of the entire work, and the approval and acceptance of the same by the party of the first part, which amount shall be forfeited by the said party of the second part in the event of the nonfulfillment of this contract; it being expressly covenanted and agreed that said forfeiture shall not relieve the party of the second part from liability to the party of the first part for any and all damages sustained by reason of any breach of this contract."

The complaint filed in the case alleged the commencement of the work contracted for and the making by the government of two payments on account, one of $4,356.24, made on the 10th of June, 1905, and the other of $3,539.16, made on the 21st of July of the same year, and that no part of those sums has been repaid, and it alleged various subsequently discovered fraudulent practices on the part of the contractor, and also various other failures on his part to comply with the provisions of the contract and various efforts by the government authorities to get the contractor to remedy such failures, defects, and defaults, without success, which neglect, failure, and refusal on his part, the complaint alleged, continued to September 1, 1905; that notwithstanding those facts Boggs continued in possession of the work until November 4, 1905, on which day the whole of it, so far as then performed, was, through his fault and negligence, destroyed by fire; that subsequently, to wit, about December 28, 1905, the government took possession of the premises and has ever since remained in possession thereof; that thereafter and pursuant to proceedings regularly had and taken by the plaintiff, acting through its Commissioner of Indian Affairs, the plaintiff entered

into a contract with one James H. Owen "for the construction of said stone mess-hall and kitchen at said Rice Station Indian School in all respects as required by said contract with the said Augustus W. Boggs as hereinabove set forth, except as to the time of the completion thereof, for the sum of sixteen thousand six hundred ($16,600.00) dollars, which said last-mentioned sum said plaintiff had been required to pay for the purpose of securing the completion of the said work agreed by said Augustus W. Boggs, under and by the terms of said contract with him hereinabove referred to, to be by him completed as aforesaid"; that after the 4th day of November, 1905, and prior to the entering into said contract with said James H. Owen, the plaintiff duly advertised for bids 'or the construction of the said mess-hall and kitchen "in accordance with the same terms and specifications as contained in said contract with said defendant Augustus W. Boggs"; that certain bids were received in response to that advertisement, of which bids so received the lowest was the bid of the said Owen "agreeing to construct said stone mess-hall and kitchen, in all respects as required by said contract with said defendant Augustus W. Boggs, for the said sum of sixteen thousand and six hundred ($16,600.00) dollars, which said sum was a reasonable price to be paid for and was and is the reasonable value of the said construction of said stone mess-hall and kitchen in accordance with the contract with the same James H. Owen."

The complaint further alleges that by reason of Boggs' failure and refusal to construct and complete the structures contracted for by him, the plaintiff was obliged to and did construct and equip a laundry building for use at the said Rice Station Indian School at a cost of $4,339.10, which would not have been required had the mess-hall and kitchen been constructed and completed by Boggs as called for by his contract. The prayer of the complaint was for judgment for damages alleged to have accrued to the plaintiff by Boggs' default.

Except as to its execution of the bond sued on and the jurisdictional averments, the separate answer of the surety company (plaintiff in error here) put in issue the material allegations of the complaint. The cause was tried by stipulation of the respective parties before the court without a jury.

The court found as facts, among other things, the making of the contract between the plaintiff and Boggs, and the execution by the surety company of the bond for the faithful performance by the contractor of his obligations, the entry of Boggs upon the performance of the contract on or about the 12th of April, 1905, and his subsequent failure to comply with the provisions of the contract in many particulars set out in the findings, both as respects material and workmanship; that during the progress of the work the plaintiff made to Boggs the two payments mentioned, no part of which has ever been repaid; that on the 1st day of September, 1905, Boggs had failed to complete the work in accordance with the provisions of the contract or within the time therein specified; that on the 3d day of October, 1905, Boggs caused his interest in the mess-hall and kitchen to be insured; "that on or about the 27th day of October, 1905, the plaintiff rejected the work done, materials furnished, and building thereby and thereof constructed as previously offered for acceptance by the said Augustus W. Boggs"; that on November 4, 1905, while the work, material, and structures were still in the possession of Boggs, all thereof were completely destroyed by fire; that on the 28th day of December, 1905, the plaintiff, pursuant to the terms of the contract, and because of the failure and refusal of Boggs to perform its terms and to complete and turn over the buildings as therein required, took possession of the premises and directed Boggs to leave the Indian reservation, where the buildings had been located, which he did, since which time the plaintiff has been continuously in the possession thereof; that at the time Boggs was so ordered to leave the premises he had "belonging to him and located upon said premises certain building materials, tools, and implements, of the reasonable value of $2,418.58; that all of said materials, tools. and implements, as aforesaid, were confiscated and seized by plaintiff, although the same then and there belonged to Augustus W. Boggs, as aforesaid; that no part of the said materials, tools, and implements; as aforesaid, were ever returned to the defendants herein, or either of them, nor was any part of the value

thereof ever paid to the defendants or either of them; that, on the contrary, all of said materials, tools, and implements, as aforesaid, were kept, retained, and used by the plaintiff."

The twenty-third and twenty-fourth findings of fact are as follows:

"That it is not true that said plaintiff did not comply with the terms, covenants, and agreements, in said contract specified, but it is true that plaintiff has duly and regularly performed all of the terms, conditions, and obligations of said contract on its part to be performed. It is not true that plaintiff without the knowledge or consent of said defendants, or either of them, or at all, or in violation of the terms or conditions of said bond, on at all, changed or abrogated the terms of said contract in any particular. It is not true that said plaintiff without the knowledge or consent of the defendants, or either of them, or at all, extended the time of the performance of said contract for the said Augustus W. Boggs, otherwise or at all. It is not true that the failure and delay of the said Augustus W. Boggs to complete the said mess-hall and kitchen within the period of time prescribed by said contract was by or with the consent of the said plaintiff. It is not true that the said plaintiff without the knowledge or consent of the defendants, or either of them, further violated, or violated at all, the terms or conditions of said contract either by building or causing to be built the said stone mess-hall and kitchen on or along different lines than those provided for in said contract, or that plaintiff caused said stone mess-hall and kitchen to be built or constructed in violation of or contrary to the plans, drawings and specifications made a part of said contract. It is not true that under or pursuant to the directions of plaintiff in the construction of said stone mess-hall and kitchen by said defendant Augustus W. Boggs, said work was improperly done, or that plaintiff caused the said stone mess-hall and kitchen to be constructed by said defendant Augustus W. Boggs improperly or in violation of the terms and specifications agreed upon in said contract. It is not true that through the act, or any act, of plaintiff herein, the consideration for the bond mentioned in said complaint has wholly failed, or failed at all, or that the same is null and void and without effect.

"That on or about the 8th day of December, 1906, plaintiff, acting by and through the then Commissioner of Indian Affairs, advertised for bids to be received on or before January 16, 1907, for the construction of a stone mess-hall and kitchen at said Rice Station Indian School; that certain bids were received in response to said advertisement; that of said bids so received, the lowest received was the bid of one James H. Owen, of Los Angeles, Cal.; that on the 22d day of January, 1907, in pursuance of said bid, said James H. Owen entered into a written contract with plaintiff for the construction of a stone mess-hall and kitchen for the sum of $16,600 on the site occupied by the building theretofore constructed by the said Augustus W. Boggs; that the said sum of $16,600 was paid by the plaintiff to the said James H. Owen under said contract for the construction of said building thereunder in lieu of the stone mess-hall and kitchen agreed to be built for and delivered to plaintiff by said Augustus W. Boggs under and by the terms of said contract with him, heretofore referred to, to be by him completed as aforesaid; that the said James H. Owen constructed the building aforesaid according to the contract between himself and plaintiff, and in accordance with the plans and specifications thereunto attached; that the reasonable value of the structure built by the said James H. Owen under the contract, plans and specifications between himself and plaintiff was $16,600 at the time the same was constructed; that the aforesaid contract, plans, and specifications between plaintiff and the said James H. Owen were different in many substantial respects from the contract, plans, and specifications between plaintiff and the said Augustus W. Boggs; that the building required to be erected and actually erected by the said James H. Owen under his contract, plans, and specifications was different in many substantial respects from the building required to be erected by the said Augustus W. Boggs under his contract, plans, and specifications; that $1,200 of the contract price required to be paid and actually paid to the said James H. Owen under his contract applied to work wholly outside of the work provided for in the contract between the

said Augustus W. Boggs and plaintiff; that $500 of the aforesaid contract price required to be paid and actually paid to the said James H. Owen under his contract by plaintiff was for work and materials in excess of what was embraced and included in the contract between the said Augustus W. Boggs and plaintiff; that the cost of labor and building supplies was different in 1907 from their cost in 1905; that plaintiff waited from the 28th day of December, 1905, to the 22d day of January, 1907, before entering into a new contract for the construction of said building; and that by reason of the lapse of time and the changes in prices in the meantime, a comparison between the two contracts furnishes no basis for estimating the plaintiff's damages in this case."

Judgment was thereupon entered against the defendants, but for a less amount than the plaintiff claimed to be entitled to, resulting in not only a writ of error sued out by the surety company, but a cross-writ of error sued out by the United States, both of which are now for consideration.

Gray, Barker, Bowen, Allen, Van Dyke & Jutten and William A. Bowen, for plaintiff in error.

A. I. McCormick, U. S. Atty., and G. Ray Horton, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge (after stating the facts as above). The findings, as well as the evidence, show many failures on the part of the contractor to perform his obligations under the contract, including his refusal to remedy defects pointed out to him by representatives of the government and his failure to remedy such defects within the stipulated time after the serving upon him of the required notice, and also his failure to complete the work contracted for within the stipulated time. The taking of possession by the government of the premises, together with all materials, tools, and machinery thereon belonging to the contractor, was therefore fully authorized by the contract; but for the purpose, as is expressly declared in the contract, "at the expense of said party of the second part, to complete or have completed the said work, and to supply or have supplied the labor, materials and tools of whatever character necessary to be purchased or supplied by reason of the default of the said party of the second part; in which event," proceeds the contract, "the said party of the second part and his sureties on the bond to be given for the faithful performance of this agreement shall be further liable for any damages incurred through such default and any and all other breaches of this contract."

While the complaint alleges that the subsequent contract made by the government with Owen for the construction of the mess-hall and kitchen, which Boggs had failed to build and complete as he had agreed to do, was, except as to the time of completion thereof, based upon the same plans and specifications, and was in all respects the same as the Boggs' contract, the findings of fact made by the court below, as well as the evidence in the case, show such allegations to be far from true. The court expressly finds, what the evidence abundantly shows, that the contract between the government and Owen and the plans and specifications upon which it was based "were different in many substantial respects from the contract, plans, and specifications between plaintiff and the said Augustus W. Boggs; that

the building required to be erected and actually erected by the said James H. Owen under his contract, plans, and specifications was different in many substantial respects from the building required to be erected by the said Augustus W. Boggs under his contract, plans and specifications; that $1,200 of the contract price, required to be paid and actually paid to the said James H. Owen under his contract applied to work wholly outside of the work provided for in the contract, between the said Augustus W. Boggs and plaintiff; that $500 of the aforesaid contract price required to be paid and actually paid to the said James H. Owen under his contract by plaintiff was for work and materials in excess of what was embraced and included in the contract between the said Augustus W. Boggs and plaintiff; that the cost of labor and building supplies was different in 1907 from their cost in 1905; that plaintiff waited from the 28th day of December, 1905, to the 22d day of January, 1907, before entering into a new contract for the construction of said building; and that by reason of the lapse of time and the changes in prices in the meantime, a comparison betwen the two contracts furnishes no basis for estimating the plaintiff's damages in this case."

The government, pursuant to the terms of the contract between it and Boggs, by reason of his default, took from him the possession of the premises as well as all of his materials, machinery, and tools thereon for the purpose of having, at his expense, his contract fulfilled; and for that his surety bound itself, but not for the fulfillment of any essentially different contract. It is true that by its contract with Boggs the government reserved to itself the right "to make changes, alterations or omissions from or additions to the work and materials herein provided for"; that is to say, changes in, additions to, or omissions from, the work covered by the plans and specifications of the contract. This is plainly shown by the subsequent provisions of article 3 of the Boggs' contract, in which the reservation occurs. It is, in the same clause, followed by these provisions:

"The valuation of such work and materials (that is to say, such work and materials as might be embraced by the authorized changes and alterations), if not agreed upon, to be determined on the basis of the contract unit of value of material and work referred to, or, in the absence of such unit of value, on prevailing market rates, which market rates, in the case of dispute, are to be determined by the said Commissioner of Indian Affairs, whose decision with reference thereto shall be binding upon both parties; that no claim of damages on account of such changes or for anticipated profits shall be made or allowed; that the party of the second part (Boggs) shall not be allowed any additional compensation for labor or material unless he receives written authority from the Commissioner of Indian Affairs, and the price agreed upon before execution of the work; that no addition to or omission from the work herein specifically provided for shall make void or affect the other provisions or covenants of this contract, but the difference in the cost thereby occasioned, as the case may be, shall be added to or deducted from the amount of the contract; and that in the absence of any express agreement or provision to the contrary, no addition to or omission from the work herein specifically provided for shall be construed to extend the time fixed herein for the final completion of the work."

That reservation, in our opinion, affords no ground for holding the government entitled to make a substantially different contract with a

third party at the expense of the former contractor and his surety. And such was the ruling of the Supreme Court in a similar case. In speaking of a like clause in the case of United States v. Freel, 186 U. S. 309, 311, 317, 22 Sup. Ct. 875, 878 (46 L. Ed. 1177), the court said:

"Coming, then, to the question of the effect on the responsibility of the surety of the supplemental agreement of August 17th, we agree with the Circuit Court and the Circuit Court of Appeals in holding that the altera-tions thereby caused were beyond the terms of the undertaking of the surety, and extinguished his liability. The seventh action had in view such changes as might be found advantageous or necessary in the plans and specifications. But the changes called for by the new agreement had no reference to the original plans and specifications, but changed the location of the dry dock, requiring the contractor to make additional excavations and connections with the water, at an increased expense, and gave an increased time of perform-ance."

We do not understand the case just referred to (United States v. Freel) to be overruled by the very recent decision of the same court in the case of United States v. McMullen et al. (decided January 9, 1912) 222 U. S. 460, 32 Sup. Ct. 128, 56 L. Ed. ——.

In the present case not only do the findings show that the con-tract and the plans and specifications upon which it was based, sub-sequently made between the government and Owen, were different in many substantial particulars from the contract for which the plain-tiff in error became surety, but that the government waited more than one year before entering into a new contract, during which time there was such a change in the cost of labor and building supplies as, according to the findings of the trial court, "the two contracts fur-nishes no basis for estimating the plaintiff's damages."

In the case of American Bonding Co. v. United States, 167 Fed. 910, 93 C. C. A. 310, the question here involved was carefully con-sidered by us, and, being satisfied of the correctness of that decision, it is useless for us to pursue the subject further. Boggs' surety is not, in our opinion, liable in this action for the reason that the gov-ernment did not complete Boggs' contract, as it had the right to do, but instead chose to have the structures erected in a substantially different manner, pursuant to the contract made by it with Owen.

It results that the judgment must be reversed, and the cause re-manded, with directions to the court below to enter judgment for the defendant surety company on the findings.

It is so ordered.

GILBERT, Circuit Judge (dissenting). The case, as I view it, con-tains no question of a release of a surety resulting from a change in the contract with the assured, as in the cases of United States v. Freel, 186 U. S. 309, 22 Sup. Ct. 875, 46 L. Ed. 1177, and American Bonding Co. v. United States, 167 Fed. 910, 93 C. C. A. 310. No such issue is presented in the complaint, and no such defense is pleaded or even remotely suggested in the answer. It is a case of an action for dam-ages for the total failure of a contractor to carry out his contract. The contract, the breach thereof, and the surety's undertaking are estab-lished by the findings of the trial court. The only question in the case

is as to the measure of the plaintiff's damages. Is the government by the terms of its contract confined to proof of damages by showing the cost of constructing a building of the same kind under a new contract, or may it recover damages irrespective of the construction or cost of a new building? It is important to observe the language of the obligation which the plaintiff in error assumed. The contract provided that on default the United States was authorized and empowered to take possession and to complete the work or have it completed, "in which event the said party of the second part and his sureties on the bond to be given for the faithful performance of this agreement shall be further liable for any damages incurred through such default and any and all other breaches of this contract." These provisions do not limit the government to merely completing the contract which was entered into with the contractor, and thereby establishing by the cost of such second contract the measure of damages for the breach of the first; but the contract authorized the government to complete the work, and the very wording of the contract is that, if the government should elect to complete the work, the surety should be liable for any damages incurred through any breach whatever of the original contract. There is nothing in the contract that deprives the government of the right to recover damages generally for a total breach thereof. The trial court was of the opinion that the new contract differed so materially as to essential features that it afforded no safe measure of damages for a breach of the first contract, but allowed damages for the breach to the extent of the payments which the government had made on that contract. In United States v. Stone Sand & Gravel Co., 177 Fed. 321, 100 C. C. A. 651, the Circuit Court of Appeals for the Fifth Circuit had under consideration the right of the government to recover against a surety for the total breach of a contract, in a case where a second contract, which varied in some particulars from the first, had been let at an increased cost. The court said:

"With reference to the new contract, no recovery is sought on it in this action. And it is not apparent to us how the so-called 'substitutions' complained of can or could affect the rights of the defendants under the original contract."

In the present case, although a building was constructed by the contractor, it was not constructed according to the contract, but was essentially different therefrom, and the work done constituted "a willful and substantial departure from said contract and said plans, drawings and specifications," and the contractor "willfully, knowingly, purposely, fraudulently, and intentionally failed, neglected, and refused to erect the structure in accordance with the plans and specifications," as found by the trial court. The government rejected the work done, the materials furnished, and the building thereby and thereof constructed, and gave the contractor formal notice to tear down the building and construct another in exact accordance with the specifications. The contractor insured his interest in the building against loss by fire, and while the building was still in his possession it was totally destroyed by fire. During the progress of the work the contractor, in accordance with the terms of his contract, was paid on account thereof

$7,895.40, which has not been repaid to the government, but against which the trial court allowed a set-off for the value of materials belonging to the contractor which the government confiscated after the destruction of the building.    In American Bonding Co. v. United States, supra, the contract differed substantially from that under consideration here.    It provided that upon the default of the contractor the United States should have the right to recover from him whatever sums might be expended by it "in completing the said contract in excess of the price herein stipulated to be paid."    There was no other provision for the payment of damages.    When the new contract was let, it so far departed from the first that it was obvious that the cost of its completion could furnish no criterion for determining what would have been the cost of "completing the said·contract" first made. In the opinion it was said:

"This is not a suit to recover generally whatever damages the United States would have sustained had Axman abandoned his contract, but a suit for damages under the express stipulations of the contract which are set forth in the complaint and made the basis of the action."

In brief the decision gave effect to the rule that, if there be in the contract a provision for ascertaining the damages incurred through a violation of any of its provisions, the surety has the right to insist on its observance before being held responsible.

In George A. Fuller Co. v. Doyle (C. C.) 87 Fed. 687, in a case similar to the case at bar, the court said:

"Before plaintiff undertook the work, the contract had been broken by Doyle, and plaintiff's rights and Doyle's obligations under it had become fixed.    If plaintiff made any changes in the details of the work in the progress of completing it, they were not made as a result of any agreement between it and Doyle, such as usually operates to discharge a surety, and such changes imposed no new or modified obligation upon Doyle.    He had already failed to perform his contract, and abandoned the work, and plaintiff's cause of action had arisen thereupon, and, in my opinion, the surety's liability is in no manner affected by the fact that plaintiff, while it was doing the very work which Doyle had contracted to do, did, of its motion, some other things for the doing of which no claim is made against Doyle or his surety."

The plaintiff in error contends that the partial payments having been properly made during the progress of the work, the loss thereof constitutes no element of recoverable damages.    The general rule is that, in an action against a builder for a breach of his contract, all damages are recoverable which are the proximate result of the breach. 6 Cyc. 113.    The payments made by the government were totally lost through the default of the contractor.    The action is not one to recover money negligently paid, but to recover damages for a breach of the contract.    The government ought not to be and is not bound by payments made upon a fraudulent, negligent, or inefficient inspection of work during the progress thereof, when in fact the work has been fraudulently done in willful disregard of the terms of the contract.    Dox v. Postmaster-General, 1 Pet. 318, 7 L. Ed. 160; Kingston v. Harding (1892) 2 Q. B. Div. 494; Glacius v. Black, 50 N. Y. 145, 10 Am. Rep. 449; Barker v. Nichols, 3 Colo. App. 25, 31 Pac. 1024.    It is only where the contract stipulates in express terms that

a certificate of inspection shall be conclusive evidence of compliance with the contract that it is binding, and even in such a case it is held binding only in the absence of fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment. Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255. But in this case the contract contained the express provision that partial payments should in no way be considered as an acceptance of any work or material included in the contract.

But in any view of the defenses that may be urged against recovery of damages arising out of payments of installments of the agreed compensation, they are of no avail in a case like this, where before the completion of the building according to the plans and specifications, and before its acceptance by the government, the building was destroyed. In such a case the loss is that of the contractor, and he is not only denied a recovery of compensation for the work done, but the other party to the contract may recover from him his damages, including the partial payments made as the work progressed. Tompkins v. Dudley, 25 N. Y. 272, 82 Am. Dec. 349; School Trustees of Trenton v. Bennett, 27 N. J. Law, 513, 72 Am. Dec. 373; School District No. 1 v. Dauchy, 25 Conn. 530, 68 Am. Dec. 371; Adams v. Nichols, 19 Pick. (Mass.) 275, 31 Am. Dec. 137; Stees v. Leonard, 20 Minn. 494 (Gil. 448); 30 Am. & Eng. Encyc. of Law, 1249.