## ATLAS ASSUR. CO., LIMITED, OF LONDON, ENGLAND, v. LAWRENCE.

Circuit Court of Appeals, Eighth Circuit.
August 29, 1929.

No. 8571.

A. W. Cupler, of Fargo, N. D. (B. G. Tenneson, L. U. Stambaugh, and N. G. Tenneson, all of Fargo, N. D., and Hicks & Folonie, of Chicago, Ill., on the brief), for appellant.

Matthew W. Murphy, of Fargo, N. D. (Herbert G. Nilles, of Fargo, N. D., on the brief), for appellee.

Before STONE, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge. Appellant, who was plaintiff in the lower court, brought this action at law against the appellee, who was defendant in the lower court, to recover $4,221.84 as damages for breach of a bond. It is alleged in the complaint that on or about the 10th of June, 1922, one Roy T. Bristol, as principal, and the defendant as surety, executed a bond, which was conditioned, among other things, that the said Roy T. Bristol should keep true accounts of all moneys and other securities received by him as general agent for the plaintiff, and pay over the same to the plaintiff monthly or oftener as demanded; that said Roy T. Bristol, after the execution of the bond and while acting as general agent of the plaintiff under the terms of his employment and said bond, failed and neglected to keep true and correct accounts of all moneys received by him as such agent, but collected and failed to pay over to plaintiff $4,221.84 which was the property of plaintiff. Notice to and demand upon the defendant are alleged and his failure to pay the amount claimed to be due.

The answer admits the execution of the bond, but in effect denies all other material allegations except such as are formally admitted; alleges that there was no consideration for the signing of the bond; that if otherwise liable defendant is exonerated as a surety or guarantor under and by virtue of the terms of section 6681 of the Civil Code of North Dakota (Comp. Laws 1913), which provides as follows: "A surety is exonerated: (1) In like manner with a guarantor; (2) to the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or (3) To the extent to which he is prejudiced by an omission of the creditor to do anything when required by the surety which it is his duty to do.".

Trial by jury was specifically waived and the issues tried to the court. The lower court entered judgment dismissing plaintiff's complaint. From this judgment the plaintiff has appealed to this court, assigning as errors the refusal of the court to make findings of fact and declarations of law as submitted and in granting the motion of defendant for judgment of dismissal.

It is the contention of the defendant: (1) That the instrument sued upon in this action as a bond was at most only an offer of guaranty, which required notice of acceptance; (2) that the contract of employment between the principal named in the bond and plaintiff was materially altered without the knowledge or consent of the defendant, and hence he was released from all obligation under the bond; (3) that the bond was prospective in its operation and that the liability of the defendant did not extend to pre-existing debts of the principal named; and (4) that in any event he was not liable on the bond for the payment of any indebtedness of the principal in conducting his local agency.

On the other hand, it is the contention of appellant that the bond in question was not an offer of guaranty, but was an absolute obligation; that the amendment of the contract between the principal and plaintiff did not release the defendant from the bond; and that the undisputed evidence showed that the plaintiff was entitled to judgment against the defendant for the amount claimed.

It appears without dispute that Roy T. Bristol entered the employ of the plaintiff as its general agent in February, 1922, under certain written contracts appearing in the record as Exhibits A and B. By the terms of the contract Exhibit A, which is dated February 1, 1922, Bristol was appointed general agent for the writing of farm business against the hazards of fire and tornado and such other classes and hazards as might from time to time be mutually agreed upon, for all territory in the state of North Dakota, or such other territory, as might be agreed upon. The contract fixed the authority of the agent with reference to the appointment of special agents and solicitors, the issuance and rejection of applications for insurance, etc. Article 2 provided the basis of compensation. Article 3 provided that the contract should take effect February 1, 1922, and that it might be terminated at any time by either party giving 60 days' written notice. It also contained the following provision: "The general agent agrees to furnish such bond as may be required by said company, the premium thereon to be paid jointly and equally by said general agent and said company."

Exhibit B is a similar contract by which Bristol was appointed general agent of the hail department of the plaintiff for the state of North Dakota. The terms of this contract were substantially identical with those of Exhibit A, and it contained a provision identical with that quoted from Exhibit A relative to the furnishing of a bond.

After the signing of the bond in question, these contracts were amended so as to change the amount of compensation to be received by Bristol. This amendment was in writing, dated Chicago, March 23, 1923, and Fargo, N. D., on March 26, 1923, and by its terms was to be considered effective as of March 1, 1923.

The amount of the defalcation is not disputed, but it is the claim of the defendant that there was included therein the sum of $520.22 arising out of the local agency of Bristol at Fargo, and that this liability was not covered by the bond, and it is also claimed that the money making up the amount of the defalcation had been collected and presumably appropriated before the execution of the bond, and that it was therefore not within the terms of the bond as properly construed.

The plaintiff was not present at the time the bond was signed by the defendant, and defendant received no notice that the plaintiff had accepted the bond, nor did he receive personally any compensation for executing the bond.

As this contract was signed in North Dakota, and was to be performed in North Dakota, it is important to note certain of the North Dakota statutes in force in that state at the time of these transactions. Those having a possible bearing upon the questions involved are as follows:

"Definition of Guarantor and Suretyship.

"Section 6651. *Defined.* A guaranty is a promise to answer for the debt, default or miscarriage of another person."

"Section 6675. *Defined.* A surety is one who at the request of another and for the purpose of securing to him a benefit becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefor."

"Creation of Liability.

"Section 6653. *Consideration for.* When a guaranty is entered into at the same time with the original obligation or with the acceptance of the latter by the guarantee and forms with that obligation a part of the con-

404

sideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation."

"Section 6656. *Acceptance necessary.* A mere offer to guaranty is not binding until notice of its acceptance is communicated by the guarantee to the guarantor; but an absolute guaranty is binding upon the guarantor without notice of acceptance."

"Rights of Surety and Guarantor: Are Equal and Coextensive.

"Section 6682. *Same as guarantor.* A surety has all the rights of a guarantor whether he becomes personally responsible or not."

"Section 6681. *How exonerated.* A surety is exonerated:

"1. In like manner with a guarantor.

"2. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights or which lessens his security; or,

"3. To the extent to which he is prejudiced by an omission of the creditor to do anything when required by the surety which it is his duty to do."

"When Exonerated.

"Section 6668. *When exonerated.* A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor without the consent of the guarantor the original obligation of the principal is altered in any respect, or the remedies or rights of the creditors against the principal in respect thereto is in any way impaired or suspended."

"Section 6670. *Guarantor once exonerated not liable.* The rescission of an agreement altering the original obligation of a debtor or impairing the remedy of a creditor, does not restore the liability of a guarantor who has been exonerated by such agreement."

 The trial court expressed the view that the contract in this case was one of guaranty, and that, as such, notice of its acceptance was essential to its validity, and as no such notice had been given the instrument never became effective. The distinction between a contract of guaranty and one of suretyship is often shadowy, but in the view we take of this case it is not material whether the instrument in question be one of guaranty or surety. It was unilateral and required acceptance on behalf of the obligee in order to render it effective. Of course, where a contract of surety or guaranty is executed at the request of the obligee and delivered to him, or is executed pursuant to a specific agreement that the particular bond shall be executed and accepted, then acceptance would be presumed.

In the case at bar, however, it is noted: (1) That this bond was not executed concurrently with the contract of employment, but some three months later. (2) It was not executed at the request of nor in the presence of the obligee, but at the request of the principal. (3) The contract of employment, while specifically providing for the execution of a bond, states that the general agent agrees to furnish such bond "as may be required" by said company, the premium thereon to be paid jointly and equally by said general agent and said company; and (4) It was the intention of the parties to the contract that a bond with compensated surety should be furnished.

In Singer Mfg. Co. v. Freerks, 12 N. D. 595, 98 N. W. 705, 706, relied upon by counsel for appellant, it appears that the contract under consideration in that case was the "bond agreed to be furnished," and it appears that "the machine company had agreed in advance to accept this bond, and could not refuse to do so." In the instant case, however, the bond was not such as was contemplated by the parties to the original contract. It was certainly not effective when delivered to the principal, nor indeed until approved by the obligee named therein. It was therefore in its inception a conditional agreement depending on consent being given, presumably within a reasonable time. M. E. Smith v. Kimble, 31 S. D. 18, 139 N. W. 348, at page 352, Ann. Cas. 1916A, 497; M. E. Smith & Co. v. Kimble, 38 S. D. 511, 162 N. W. 162 at page 164.

Under these circumstances whether this contract be construed to be a contract of surety or of guaranty we are of the view that notice of its acceptance was essential to give it any binding effect. Suretyship, like other contracts, requires assent manifested by the parties so that each may know the other is bound. It frequently occurs that this assent is manifested in the contract, but that is not true in the case at bar.

 As has been observed, the contract of employment which had been entered into some months before the signing of this bond was, subsequently thereto, amended so as materially to reduce the commission to be received by the principal. Where the contract of surety is not affected by local statutes but governed only by common-law principles, this court has held, in the case of a compen-

sated surety, that an alteration or change in the principal obligation in order to effect a release of a surety must be a material one, and that such change releases the surety only to the extent of the damage resulting from the change in the original contract. The surety here, however, if he be such, is not a compensated surety, and the North Dakota statute fixes the rule in this regard, by providing that a surety has all the rights of a guarantor, and section 6668 provides that: "A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor without the consent of the guarantor the original obligation of the principal is altered *in any respect*, or the remedies or rights of the creditors against the principal in respect thereto is in any way impaired or suspended."

Under this statute the matter of prejudice by, or materiality of, the change is not open to inquiry, because the statute provides that if the obligation is altered "in any respect" the guarantor, and likewise the surety, is exonerated.

It is therefore not necessary to inquire into nor to determine to what extent, if at all, the surety or guarantor in this case was injured or prejudiced by the alteration made in the principal contract. Without reference to this statutory provision the rule of strictissimi juris is applicable in the case of an individual surety, signing without compensation, even though a rule of more liberal construction is applied in the case of a compensated surety. Hooper-Mankin Fuel Co. v. Chesapeake & O. Ry. Co. (C. C. A.) 30 F.(2d) 500.

The North Dakota statute preserves the rule as laid down by the United States Supreme Court in Miller v. Stewart, 9 Wheat. 680, 6 L. Ed. 189, in an opinion by Justice Story wherein it is said: "It is not sufficient, that he may sustain no injury by change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and variation is made, it is fatal." See, also, Crane v. Buckley, 203 U. S. 441, 27 S. Ct. 56, 51 L. Ed. 260.

In Rumely Co. v. Anderson, 35 S. D. 114, 150 N. W. 939, 941, the Supreme Court of South Dakota had before it the question of the effect of a change in the original contract between the obligee and principal. The defendant in that case signed certain machinery notes secured by a chattel mortgage. Thereafter the payee and principal debtor entered into an agreement by which the debtor agreed to purchase a new and larger engine and the payee to accept a return of the old engine, which the payee took possession of and resold. The South Dakota statutes are identical with the above-quoted North Dakota statutes. In the South Dakota case the notes had been negotiated and were in the hands of an innocent purchaser, but notwithstanding this fact the court held that the surety was released. In the course of the opinion it is said: "It appears that all said six original notes, which were all for similar amounts, including the two last signed by respondent, were secured by a chattel mortgage upon the threshing machine, and that the three first notes had been paid prior to December 12, 1907; that on said last-named date, without the knowledge or consent of respondent, the said P. P. Anderson, the principal debtor, entered into an agreement with the Advance Thresher Company to purchase a new and larger engine, and as a part of said agreement it took back from said principal debtor the other engine, securing the payment of said notes executed by respondent, at the agreed value of $1,500, and which engine, so securing said notes, was thereafter sold and delivered by the Advance Thresher Company to a third party. A surety is exonerated in like manner with a guarantor (Civ. Code, § 1999), we are of the view that under the provisions of section 1986, Civil Code, respondent was exonerated and released, as such surety, from the payment of said notes, and which fact constituted a good and valid defense in favor of respondent against the Advance Thresher Company at the time said notes sued upon were transferred to plaintiff." See, also, Reese v. U. S., 9 Wall. 13, 19 L. Ed. 541; United States v. Freel, 186 U. S. 309, 22 S. Ct. 875, 46 L. Ed. 1177; U. S. Fidelity & Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242.

It is argued by counsel for appellant that the defendant is precluded from claiming that he should be released because of the change in the original contract, by reason of the recitals in the bond, and counsel quote the following from the bond: "And that this bond shall not be discharged thereby, nor by any act or thing other than the actual payment in cash of all moneys at any time due, with interest thereon until paid." And it is also urged that the change in the contract was warranted by reason of the provision in the bond to the effect that the bond should continue "so long as he shall continue such (general agent) whether by the present or any future, appointment." The intention of

the parties should be gathered from the instrument as a whole, and not from fragmentary sentences that may be culled therefrom. The change or amendment of March 1, 1923, did not constitute a future appointment. It provides for a change in the form and amounts of commission and sums deductible by the company before dividing profits, and it dealt solely with the subject of compensation, and the amendment specifically provides that "all other conditions of the agreement to remain as before." As to the stipulation that the bond should be discharged only by the actual payment in cash of moneys at any time due with interest thereon until paid, it should be observed that this language is a part of the following provision in the bond: "In case of default of payment of money to said company, any notes or other securities given therefor shall be considered additional security only, and that this bond shall not be discharged thereby, nor by any act or thing other than the actual payment in cash of all moneys at any time due, with interest thereon until paid."

It is quite clear that this provision intends to reserve to the company the right to take notes or other securities for past-due obligations, without by so doing discharging the principal or surety. North Dakota Code, section 6677, specifically provides that "a surety cannot be held beyond the express terms of his contract," thus preserving the rule of strictissimi juris which is still applied generally in the case of an uncompensated surety.

We are therefore of the opinion that, if the bond ever became effective, the surety was released by the change in the original obligation between the principal and obligee named in the bond. As this disposes of the case, it is not deemed necessary to consider other questions presented on this appeal.

The judgment of the lower court is affirmed.