KNUTSON v. METALLIC SLAB FORM
CO. et al.

No. 10054.

Circuit Court of Appeals, Fifth Circuit.

May 22, 1942.

Rehearing Denied Aug. 19, 1942.

J. H. Burr, of Houston, Tex., for appellant.

M. S. McCorquodale, of Houston, Tex., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant Knutson in the spring of 1939 entered into a contract with Sears-Roebuck and Company to build of concrete certain buildings in Houston, Texas, extensive plans and specifications being attached. Early in May Knutson subcontracted with appellee, Metallic Slab Form Company (called hereafter Metallic), to do the work and furnish the material for erecting and removing the forms for the concrete in two buildings referred to as the Retail Store and Service Building, to be completed Aug. 1, the general contract of Knutson and its plans, specifications, and conditions being referred to and made a part thereof. Appellee, Western Casualty and Surety Company (called Western for brevity), bound itself as surety for Metallic on May 15, 1939, attaching a copy of Metallic's contract to its bond. The work did not go smoothly, and on August 23rd Metallic stopped, and Knutson had to finish it. He sued Metallic and Western for damages in a State court, they removing to the federal district court because of diversity of citizenship. Metallic contended the fault, and its own failure, were due to Knutson, and sought by counterclaim to recover damages; Western at first (Feb. 10, 1940) merely adopted Metallic's answer as its own, but later (Oct. 3, 1940) it amended and claimed discharge as surety. A trial was had before the judge, a jury being waived, who made findings of fact and conclusions of law, on which he adjudged the surety discharged, found some items of damage for Knutson and some for Metallic as between them, with a net judgment of $3,876 for Knutson against Metallic. Knutson alone appeals.

We have concluded the judgment must be reversed for a further hearing in the District Court; and without stating in detail the issues made in a plethora of pleadings, and without having examined all the voluminous evidence, we will state as briefly as possible the reasons.

The surety is not discharged. The two grounds put forward in the findings are: 1. The annulling on July 27th of the provision in the contract for paying 90% of the monthly architect's estimates, and the retention of 10%, by an agreement that Knutson would thereafter pay in full Metallic's payrolls and bills for material delivered on the job; 2. The making by Knutson and Metallic (appellant's brief says on the same date) of an agreement to do the form work for a third smaller building across the street from the two mentioned in the contract, and the carrying on of this additional work along with the contract work. We assume that either or both of these things were such changes in the surety's assumed obligations and risk as would ordinarily discharge him under Ryan v. Morton, 65 Tex. 258, and Lonergan v. San Antonio L. & T. Co., 101 Tex. 63, 104 S.W. 1061, 106 S.W. 876, 22 L.R.A.,N.S., 364, 130 Am.St.Rep. 803; United States v. Freel, 186 U.S. 309, 22 S.Ct. 875, 46 L.Ed. 1177; and Fort Worth Independent School Dist.

v. Ætna C. & S. Co., 5 Cir., 48 F.2d 1, 77 A.L.R. 222; notwithstanding a broad consent, and waiver of notice, in this surety's contract as to changes in the contract and additions to the work. But an important fact, not noticed in the findings, puts a different face on the matter. On July 8th (the pleadings say July 12) Knutson wrote to Western that Metallic was requesting payments in excess of work performed to that date, and unpaid furnishers of material were threatening to file liens against the building. Western replied on July 21st that it had gone into the matter thoroughly with Metallic, that it considered Knutson had violated the contract with Metallic, and "as surety * * * we feel that your actions and doings in connection with this job, as they affect Metallic are a plain and clear violation of the terms of our bond, and therefore we respectfully decline to assume any liability thereunder." There was no specification of Knutson's violations. It is not contended that paying more than 90% of the architect's estimates was at that date one of them. This letter was a clear and final renunciation by the surety, a repudiation of further obligation. Knutson treated it as such. Since Metallic was financially unable to carry on, and Western refused to go forward, Knutson was forced to complete the work himself; and at the expense of the surety if the latter's renunciation was unjustified. Knutson might have required Metallic to remove its laborers and material from the job, but with apparent prudence, since Metallic's work was satisfactory, he arranged with Metallic to continue, overcoming the present crisis by a formal written alteration of their former contract by agreeing to pay in full the labor and material bills. This in no way prejudiced the surety, for he had terminated his contract. If he is liable in damages for doing so, it probably benefited him, for it is not contended a new organization would have been better or cheaper. On Aug. 10th Knutson did attempt to put additional hands of his own to work, but the judge found they were inefficient and allowed only half their pay as a charge against the job. To pay in full the wages and the materials necessary to complete the job was no wrong to the surety under these circumstances, but doing only what the surety ought to have done. Nothing was paid to Metallic and diverted or otherwise lost.

■ The judge did not find the date on which Metallic agreed to do the form work on the third small building, but Western in its brief says it was done orally also on July 27. The architect had ordered it on June 7, referring to drawings and specifications dated May 1, and so in existence when Metallic made its original contract. This new work may have been really "additional work", contemplated in the contracts of May 15; but if it was not, then it was a new outside contract with Metallic, and the surety had nothing to do with it, and is not liable for the cost of its completion. Its cost was kept separate and can easily be figured out. Again we say that this was not a change in the surety's contract and risk during their currency, but was an outside matter arising after the surety had repudiated his contract. Metallic was not disqualified from taking other employment from Knutson.

■ It remains to consider whether Western had just cause to rescind the contract on July 21, not because of changes in the contract, but because of Knutson's defaults in the execution of it. Western lays most stress on Knutson's having charged Metallic with $10,570 paid to South Texas Lumber Company. This was a bill for lumber to build the forms which was shipped to another subcontractor which preceded Metallic in beginning the work but had quit about April 24, 1939. Metallic used the new lumber and reused such as had been used and was usable, and ratified the charge of the bill to its account. Metallic plainly owed for the value of the lumber it used, or its price if it agreed on a price with Knutson. The surety, however, is not bound by Metallic's ratification of the full charge if it was erroneous and can have it corrected; but we see nothing in it to warrant the surety in rescinding the contract without even having specifically complained about it.

■ The other defaults are not refusals of Knutson to do what he had expressly agreed to do, but failures to act as well or as promptly as he should pursuant to his implied obligation to so conduct his own work as to enable Metallic to do its work with reasonable facility. The particular complaints are that the whole job was not well organized, lines and grades not promptly established, a caved excavation not soon cleared out, backfilling not done and reinforcing steel not furnished as needed, and the like; so that Metallic's

work, though not stopped, was delayed and made more expensive. Every such failure in either party is not ground to rescind a building contract. Its main purpose is to get the building constructed. Such contracts generally provide damages for delays, and adjustments by the architect. Where these afford a fair redress, failures which do not stop the work or amount to a refusal to perform ought not to end the undertaking. Certainly they ought not, unless expressly asserted and promptly acted on as ground for rescission; for where a right to rescind arises it is ended by an election to proceed with the contract. Thus where one party delays the other additional time is often considered the remedy. 9 Am.Jur., Building Contracts, § 51. Even when payment is not made when due, it is not sufficient reason to stop work unless it really prevents work. Id. § 57. In Chamberlin v. Booth & McLeroy, 135 Ga. 719, 70 S.E. 569, 35 L.R.A.,N.S., 1223, it is said in such a case a partial failure of performance will not give the other party a right to rescind unless the act failed to be performed goes to the root of the contract, and there ought not to be a rescission where there may be compensation in damages. All the things here complained of can be set right by damages, and were so remedied in the judgment. None were made ground for quitting when they happened, but the contract was adhered to and the work went on. Nothing new had occurred about July 21 to cause a rescission, except Knutson's request that the surety come to the rescue.

While the surety ought not in our opinion to be released, it and Metallic are of course entitled to a fair adjustment of their claims up to July 21. Thereafter the surety is liable to be charged with the actual, necessary cost of completing the work, but not with the cost of the work on the third building, nor with unnecessary or imprudent expenditures such as the judge found the use of Knutson's own men to be in part.

The accounting with Metallic after July 21 will be somewhat different because of special agreements Metallic may have made on its own account, especially in reference to the third building.

We have, in the main, not gone beyond the judge's findings of fact in considering this case, and except as to the discharge of the surety we have not intended to ad-judicate the facts. We neither approve nor disapprove the findings made, but direct that the case be reopened for further hearing and for such accounting as we have indicated ought to be made.

The judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with this opinion.