293 F.2d 493
 UNITED STATES of America for the Use and Benefit of Samuel
J. PICKARD, d/b/a Pickard Engineering Company
v.
SOUTHERN CONSTRUCTION COMPANY, Inc., and Continental Casualty Company.
 No. 14239.
 United States Court of Appeals Sixth Circuit.
 Aug. 3, 1961.
 
 Edward Gallagher, Washington, D.C. (Gracey, Buck, Maddin & Cowan, Nashville, Tenn., by John K. Maddin, Jr., Nashville, Tenn., on the brief), for appellant.
 William J. Harbison, Nashville, Tenn. (Trabue, Minick, Sturdivant & Harbison, (Trabue, Minick, Sturdivant & Harbison, Nashville, Tenn., Hull, Willingham, S. McCowen, Atlanta, Ga., on the brief), for appellees.
 Before MILLER, Chief Judge, CECIL, Circuit Judge, and BOYD, District judge.
 SHACKELFORD MILLER, Jr., Chief Judge.
 
 
 1
 This action was filed under the provisions of the Miller Act, Section 270b, Title 40 United States Code Annotated, in the name of the United States of America for the use of Samuel J. Pkckard doing business as Pickard Engineering Company, against the appellees, Southern Construction Company, Inc., hereinafter called Southern, and Continental Casualty Company, surety on its performance bond, to recover on a construction contract alleged by Pickard to have been breached by Southern.
 
 
 2
 Southern Construction Company was the prime contractor on a project for the rehabilitation of certain barracks at Fort Campbell, Tennessee. On May 5, 1955, Pickard entered into a subcontract with Southern to do all the plumbing and heating required in the specifications of the prime contract at the contract price of $50,000.00. The complaint alleged that under the subcontract Southern failed to make the required progress payments to Pickard as the work progressed; that without justification it withheld funds from the plaintiff for long periods of time, rendering it impossible for plaintiff to meet its payment obligations to its suppliers, labor and materialmen; that despite the failure of Southern to abide by the contract, plaintiff prosecuted the work to substantial completion but received from Southern only one progress payment in the amount of $13,000.00. Plaintiff sued for the specified contract price of $50,000.00 less this payment of $13,000.00.
 
 
 3
 Under the subcontract Pickard was required to furnish a performance bond to Southern in the amount of $50,000.00, guaranteeing faithful performance of the subcontract. Pickard was unable to furnish the required performance bond on this project, and remained unbonded throughout the course of this work. Work began on the contract by Pickard in May or June 1955 and continued until December 16, 1955.
 
 
 4
 Simultaneously with the performance of the work at Fort Campbell, Tennessee, Pickard was performing similar work on much larger subcontracts which he held with Southern for rehabilitation of barracks at Fort Benning, Georgia. Pickard's primary supplier for both the Fort Campbell project and the Fort Benning project was the Atlas Supply Company.
 
 
 5
 On October 7, 1955, there was executed a supplemental agreement between Pickard and Southern, which recited that Pickard held three subcontracts with Southern at Fort Benning and one subcontract for work at Fort Campbell; that Pickard had been unable to obtain performance bonds on the various jobs; that Southern had been holding certain funds due him in lieu of said bonds; and that Pickard was in need of funds with whicn to complete the jobs and to pay other bills. Under this agreement Southern waived provision requiring payment for performance bonds and Pickard waived all claims against Southern as a result of the withholding of any funds due Pickard on requisition in lieu of bond. Pickard further authorized Southern to withhold all other and further payments on work completed or to be completed during the course of said jobs, until the completioin of each job by Pickard and the final acceptance and payment thereof by the Army to Southern, excepting payments therein agreed to be made, 'plus additional payments which will be made by Southern either jointly to Pickard and to subcontractors or materialmen, or to Pickard, as Southern is paid on requisitions which include labor and/or material furnished by such subcontractors and/or materialmen.'
 
 
 6
 After October 7, 1955, and prior to December 16, 1955, when Pickard withdrew from the job, Southern received from the Government two payments, one on October 17, 1955, in the amount of $12,002.46 and one on November 4, 1955, in the amount of $15,512.95. Southern failed to pay appellant or his suppliers or materialmen as it received these payments from the Government, as required by the contract.
 
 
 7
 On December 16, 1955, Pickard's men left the job at Fort Campbell, Tennessee, and were never heard from again. No notice of any sort was given by Pickard, his foremen or any representative on his behalf of the withdrawal, the purpose thereof, or the reasons therefor. At the time when Pickard withdrew from the Fort Campbell project, the work required there under his subcontract was from 96% to 98% completed. Southern completed the work at Fort Campbell and obtained final settlement from the United States Government in April 1956.
 
 
 8
 Shortly after Pickard left the work at Fort Campbell he also left the Fort Benning project.
 
 
 9
 On October 7, 1955, when the supplemental agreement was executed, and continuously thereafter to the time when Pickard left the Fort Campbell job there was an unpaid balance in the amount of $34,520.00 on the account to the Atlas Supply Company for materials furnished by Atlas at Fort Campbell. In addition to this amount, Atlas Supply Company was claiming a balance due it from Pickard in the sum of $104,000.00 on the Fort Benning job. Southern did not dispute the amount of the Atlas account at Fort Campbell. However, it disputed the Fort Benning claim of Atlas in its entirety. In August 1956 a conference was had between Southern officials and representatives of the Atlas Supply Company, as a result of which Southern paid to Atlas Supply Company in August 1956 the sum of $35,000.00 and obtained from Atlas a complete release of all liability of Southern on Pickard's accounts, both at Fort Benning, Georgia, and Fort Campbell, Tennessee.
 
 
 10
 At the time when this payment was made by Southern to Atlas, Atlas had consolidated its accounts against Pickard, and was carrying them as one consolidated account. Atlas credited the $35,000.00 payment against this single account, so that Pickard received full credit for this payment on his indebtedness to Atlas. Neither Southern nor Atlas at the time of this payment specifically undertook to allocate the $35,000.00 payment, or any part thereof, to one project or the other. It was a single indivisible payment applicable to both projects.
 
 
 11
 Pickard gave no credit to Southern for this payment on either job, and his books did not reflect the payment. There is no evidence that Pickard knew of the payment in August 1956 at the time when it was made. In April 1957, however, Pickard's attorneys were advised by the attorney for Southern that this payment had been made, and that the same had not been allocated by Southern either to the Fort Campbell project or to the Fort Benning project.
 
 
 12
 In December 1956 Pickard filed suit in the District Court for the Middle District of Georgia against Southern and the Continental Casualty Company on both the For Benning contract and the Fort Campbell project. Southern filed an answer and counterclaim, in which it alleged that it had paid to Pickard sums in excess of the total contract between the parties and sought judgment for such excess. Included in the counterclaim at this time was the $35,000.00 payment hereinabove referred to.
 
 
 13
 In April 1957, however, Pickard filed the present action in the United States District Court for the Middle District of Tennessee on the Fort Campbell project only, and this part of Pickard's claim was subsequently eliminated by amendment from the action pending in the District Court in Georgia. The action in the District Court in Tennessee was filed for 'jurisdictional' reasons, in that the Miller Act provides that every suit instituted under its provisions 'shall be brought * * * in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, * * *.' Section 270b(b), Title 40 United States Code Annotated.
 
 
 14
 In the trial of the Fort Benning case in Feorgia in March 1959, Pickard introduced certain exhibits in which he purported to list all of the payments made by Southern to him or on his behalf at Fort Benning, and to give credit for the same. He did not include the $35,000.00 payment made to Atlas by Southern in August 1956. Southern listed on exhibits filed in that case the payments made by it to Pickard or on his behalf on the Fort Benning job, for which Southern claimed credit. The $35,000.00 payment made to Atlas was not claimed in these exhibits. The District Judge stated that the record in the Georgia case showed that the $35,000.00 payment to Atlas was not submitted to nor considered by the jury in the trial of the Fort Benning case. He found as a fact that this fund had not been litigated or adjudged by the District Court in Georgia, and that credit for it was neither given by Pickard nor claimed by Southern in the previous proceedings between the parties in that court. The District Judge stated in his findings of fact that although the $35,000.00 was included in the original counterclaim filed by Southern in the Fort Benning case, it was, prior to the trial in that case, 'dropped' from Southern's counterclaim in that case, has been included by Southern as part of its counterclaim and defense in the present case, and that Southern claims credit for $34,520.00 thereof toward the contract price of the Fort Campbell project. We are unable to tell from the record before us whether the original counterclaim in the Georgia suit was amended after the Tennessee suit was filed so as to withdraw this claim from the pleadings, or if it was 'dropped' merely by the action of the parties in not presenting it in the trial of that case (compare Rule 15(b), Rules of Civil Procedure, 28 U.S.C.A.), or if it was removed from the case by pretrial procedure under Rule 16, Rules of Civil Procedure. For the reason hereinafter stated, we believe it is immaterial.
 
 
 15
 Appellant's original complaint in this action filed on April 4, 1957, sought recovery in the amount of $37,000.00 under the contract of May 5, 1955, covering the Fort Campbell job. On June 17, 1959, appellant moved to amend the complaint, and on July 31, 1959, filed an amended complaint seeking to recover $100,310.08 on a quantum meruit basis for the reasonable value of labor, materials and services furnished by him to Southern on the Fort Campbell job.
 
 
 16
 The amended complaint alleged that, except for a few minor details, appellant completed its contract work; that it became impossible to complete these details because of virtual abandonment of the prime contract work by Southern; and that such action on the part of Southern, together with its failure to make the required payments for the work as it progressed, constituted breaches of the contract by Southern entitling appellant to relief on a quantum meruit basis.
 
 
 17
 Sourthern filed an amended answer and counterclaim denying certain material allegations of the amended complaint, and alleging affirmatively that appellant defaulted in the performance of the contract, by reason of which Southern was required to complete the work under the Fort Campbell contract, and that it had paid to the appellant or for his account in order to complete said contract the sum of $57,412.27, which was in excess of the contract price of $50,000.00. It sought judgment against appellant in the amount of $7,412.27.
 
 
 18
 The jury did not return a general verdict, but answered certain factual questions submitted to it. Three of these questions, which we think material in our present consideration of the case, are as follows:
 
 
 19
 1. Did defendant, Somuthern Construction Co., Inc., by so conducting its own operations, interfere with the plaintiff Pickard in the performance of his work? Answer: (No)
 
 
 20
 2. Did defendant, Southern Construction Co., Inc., fail to pay plaintiff Pickard or the suppliers or materialmen of Pickard as it received payments from the Government for work performed by Pickard? Answer: (Yes)
 
 
 21
 3. If you answer either question 1 or 2 Yes, was Plaintiff Pickard induced to leave the work, either by defendant's interfering with his work or by its failure to make payments required by the contract? Answer: (Yes)
 
 
 22
 The District Judge held that appellant was not entitled to recover in quantum meruit and any recovery in its favor must be limited to the contract price.
 
 
 23
 The District Judge also ruled that Southern was entitled to use as a counterclaim in this action the $35,000.00 payment which it made to the Atlas Supply Company in August 1956, thus rejecting appellant's contention that under Rule 13(a), Rules of Civil Procedure, it was a compulsory counterclaim in the suit filed first in Georgia, by reason of which it was barred from being used as a counterclaim in the present action.
 
 
 24
 Applying these two rulings to the facts of the case, the District Judge held that the $35,000.00 credit, together with the other payments admittedly made by Southern on the contract made a total in excess of the contract price expended by Southern, and since Southern in open court waived any affirmative relief on its counterclaim, judgment was entered dismissing the action and denying any relief on the counterclaim. On this appeal, appellant challenges both of the rulings. Right of Recovery in Quantum Meruit
 
 
 25
 Appellant relies upon the well settled rule that under certain conditions a material breach of contract by one of the parties thereto confers upon the other party to the contract the right to rescind and abandon the contract and to recover in quantum meruit for the reasonable value of services and materials furnished. In a building or construction contract calling for the performing of labor and furnishing of materials covering a long period of time and involving large expenditures, a stipulatiion for payments on account to be made from time to time during the progress of the work must be deemed so material that a substantial failure to pay would justify the contractor in declining to proceed. Under such circumstances the contractor cannot be expected to finance the operation to completion without receiving the stipulated payments on account as the work progresses. Guerini Stone Co. v. P. J. Carlin Construction Co., 248 U.S. 334, 344-345, 39 S.Ct. 102, 63 L.Ed. 275; Pickens County v. National Surety Co., 4 Cir., 13 F.2d 758, 761; United States for Use of Susi Contracting Co. v. Zara Contracting Co., 2 Cir., 146 F.2d 606, 610; United States for Use and Benefit of Harkol v. Americo Construction Co., D.C.Mass., 168 F.Supp. 760, 761; Restatement, Contracts, Section 347.
 
 
 26
 The District Judge recognized this rule but correctly pointed out that in order for the rule to be applicable the breach relied upon must be applicable the which is so substantial and fundamental as to go to the very root of the contract. Knutson v. Metallic Slab Form Co., 5 Cir., 128 F.2d 408, 411; Pasquel v. Owen, 8 Cir., 186 F.2d 263, 270; Chamberlin v. Booth & McLeroy, 135 Ga. 719, 70 S.E. 569, 35 L.R.A.N.S. 1223; Brady v. Oliver,125 Tenn. 595, 614, 147 S.W. 1135, 41 L.R.A.N.S., 60; Restatement, Contracts, Section 347, Comment (e).
 
 
 27
 The District Judge ruled that appellant's contention that it became impossible to fully perform the contract on his part because of the virtual abandonment of the prime contract by Southern was answered by finding No. 1 of the jury that Southern did not interfere with appellant in the performance of his work. Finding No. 2 of the jury recognized the fact that Southern did not make payments to appellant as it received payment from the Government, as required by the contract. Finding No. 3 upheld appellant's contention that he was induced to leave the job because of this failure to make progress payments. However, the District Judge was of the opinion that these findings did not answer the ultimate question presented, namely, whether the failure to make the payments was such a fundamental breach of the contract as to justify appellant in abandoning the contract and seeking recovery in quantum meruit instead. He was of the opinion that under the particular circumstances of this case, it was not such a breach. He pointed out that the supplemental agreement of October 7, 1955, was entered into because appellant was unable to furnish the bond required by the original contract, making it necessary for Southern to protect itself against the claims of materialmen and suppliers of appellant; that the supplemental agreement gave Southern the option to make payments to appellant and materialmen jointly which would furnish such protection; that if the payments had been made jointly to appellant and the materialmen when received by Southern from the Government, appellant would nevertheless not have received any money; and that, accordingly, Southern's failure to make payment to the materialmen as payment was received from the Government did not interfere with appellant's performance of the contract unless a supplier refused to furnish appellant with the necessary materials because of the failure to receive payments. The evidence not only failed to show any such refusal on the part of a supplier, but, on the contrary, showed that the suppliers cooperated in furnishing what appellant needed to complete the job. The breach of an agreement which causes no loss to the plaintiff will not sustain a suit for rescission. Block v. City of West Palm Beach, 5 Cir.,112 F.2d 949, 952; Pasquel v. Owen, supra, 8 Cir., 186 F.2d 263, 2701. We agree with the ruling of the District Judge. Knutson v. Metallic Slab Form Co., supra, 5 Cir., 128 F.2d 408, 411.
 
 Compulsory Counterclaim
 
 28
 Appellant contends that the District Judge was in error in permitting Southern to include in its counterclaim in this case the $35,000.00 payment made to the Atlas Supply Company in August 1956, in that under Rule 13(a), Rules of Civil Procedure, this payment was a compulsory counterclaim which should have been filed and litigated in appellant's action against it in the District Court in Georgia, and therefore could not be used in this action.
 
 Rule 13(a) provides as follows:
 
 29
 '(a) Compulsory Counmterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action.'
 
 
 30
 Although Rule 13(a) does not expressly provide that failure to assert a compulsory counterclaim in a prior suit will bar its assertion in a later suit, such is the effect of the rule. The principle of res judicata applies to all such claims which should have been raised, even though actually omitted. Moore's Federal Practice, Vol. 3, Sec. 13.12; United States v. Eastoport Steamship Corp., 2 Cir., 255 F.2d 795, 805; Hancock Oil Co. v. Universal Oil Products Co., 9 Cir., 115 F.2d 45, 47; Pennsylvania R. Co. v. Musante-Phillips, Inc., D.C.N.D.Cal., 42 F.Supp. 340, 341; Gallahar v. George A. Rheman Co., D.C.S.D.Georgia, 50 F.Supp. 655, 661.
 
 
 31
 We are of the opinion that this payment arose 'out of the transaction' which was the subject matter of the suit filed in the District Court in Georgia, within the meaning of the rule. "Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.' Moore v. New York Cotton Exchange, 270 U.S. 593, 609-610, 46 S.Ct. 367, 371, 70 L.Ed. 750. The test generally applied in determining whether a counterclaim is compulsory is whether there is a logical relationship between the claim and counterclaim. Only claims that are unrelated, or are related but within the exceptions stated in the rule, need not be pleaded. Moore's Federal Practice, Vol. 3, Sec. 13.13; United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 221 F.2d 213, 216; United States v. Eastport Steamship Corp., supra, 2 Cir., 255 F.2d 795, 805; Arvey Corp. v. Peterson, E.D.Pa., 178 F.Supp. 132, 138.
 
 
 32
 The $35,000.00 payment to the Atlas Supply Company was a payment on an indebtedness of appellant to Atlas Supply Company arising out of both the Fort Benning contract and the Fort Campbell contract. No part of it was apportioned to either job. The indebtedness had been consolidated into a single account. The payment extinguished all the indebtedness of the appellant to Atlas Supply Company arising out of both projects and entitled Southern to a credit of $35,000.00 against any claim that appellant might make under either of the two contracts. In our opinion, it was a compulsory counterclaim to be asserted by appellant at the time it filed its first answer and counterclaim in the suit in the District Court in Georgia.
 
 
 33
 The District Judge, in permitting the claim to be included in the counterclaim in the Tennessee suit, was of the opinion that the claim arose out of both projects; that Southern was required to use it as combulsory counterclaim when it filed its answer in the Georgia suit; that when appellant separated his claims and filed the second suit in Tennessee Rule 13(a) required Southern also to plead the same claim in the suit in Tennessee in that it also grew out of the transaction which constituted the subject matter of the Tennessee suit; that if the claim had been adjudicated in the Georgia suit, it could not be litigated a second time in the Tennessee suit; that the claim was not adjudicated in the Georgia suit; and since Southern was required by Rule 13(a) to plead it in the Tennessee suit and it had not been adjudicated in the Georgia suit, the District Court in the Tennessee suit had jurisdiction to hear and adjudicate the claim.
 
 
 34
 The District Judge also expressed the opinion that when Southern filed its answer in the Tennessee suit, this claim was the subject of another pending action, namely, the suit in the District Court in Georgia; that by reason of the exception contained in Rule 13(a), it was accordingly not a compulsory counterclaim in the Tennessee suit; but because it grew out of that transaction it was a permissive counterclaim in that suit and could be adjudicated in that suit if not previously adjudicated by the court in Georgia. The exception in Rule 13(a) provides that if the claim is the subject matter of another pending action, such 'need not be so stated' in the defendant's answer. It was reasoned by the District Judge that this is an exception running in favor of the defendant, which although not requiring a defendant to plead such a claim, gives him an optiion to do so if he so desires. Reliance was placed upon the discussion of this question in Moore's Federal Practice, Vol. 3, Section 13.14, page 38. It will be noticed, however, that in the example there discussed, the prior pending action was filed in a state court and did not involve a compulsory counterclaim under Federal Rule 13(a).
 
 
 35
 We believe the ruling of the District Judge misconstrues the rule. Rather than being a compulsory counterclaim in both suits, we consider the claim a potential compulsory counterclaim in either of the two suits, with its compulsory status maturing in the suit in which and at the time when Southern first filed a responsive pleading. Rule 13(a) makes the counterclaim compulsory 'at the time of serving the pleading.' At the time when the answer was filed in the Georgia suit, the claim was not the subject of another pending action, and it was a compulsory counterclaim in that suit. If compulsory in that suit, it would not also be compulsory in a later suit. Nor should it be compulsory in one suit and at the same time be permissive in another suit pending between the same parties.
 
 
 36
 As pointed out above, the fact that it was not litigated in that suit, does not change its character as a compulsory counterclaim with the result that Southern is barred from subsequently asserting it in the present action. United States v. Eastport Steamship Corp., supra, 2 Cir., 255 F.2d 795, 805.
 
 
 37
 There might be merit in appellee's contention if there had been an allocation of the $35,000.00 payment between the indebtedness to Atlas Supply Company at Fort Benning and the indebtedness at Fort Campbell. But there was no allocation. In fact, at the time of the payment there was only one indebtedness, and so treated by the parties.
 
 
 38
 Appellant, in answer to the plea of inequitable hardship resulting from this ruling on a technical question of procedure, calls attention to the fact that final judgment has not yet been entered in the suit in the District Court in Georgia where the counterclaim should have been proseculted. What effect our ruling in this case should have on that case, is not for us to say.
 
 
 39
 The rulings of the District Judge are affirmed in part and reversed in part.
 
 
 40
 The judgment of the District Court is vacated and the case remanded for further proceedings consistent with the views expressed herein.