**UNITED STATES for the Use and Benefit of AUCOIN ELECTRIC SUPPLY COMPANY, Plaintiff,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA and Piedra Corporation, Defendants-Third-Party Plaintiffs, Appellants,**

v.

**SOUTH TEXAS ELECTRICAL CONTRACTORS, INC., et al., Third-Party Defendants, Appellees.**

No. 76–1115.

United States Court of Appeals, Fifth Circuit.

July 11, 1977.

Robert K. Roach, Wichita Falls, Tex., for Safeco Ins. and Piedra Corp.

Dan H. Hennigan, Houston, Tex., for South Texas Elec.

Before GOLDBERG and TJOFLAT, Circuit Judges, and WYATT *, District Judge.

WYATT, District Judge:

Safeco Insurance Company of America ("Safeco") and Piedra Corporation ("Piedra"), defendants and third party plaintiffs, appeal from a judgment in favor of South Texas Electrical Contractors, Inc. ("South Texas"), a third party defendant, entered on December 10, 1975, in the United States District Court for the Southern District of Texas.

The decision below should have turned on whether Piedra had on June 18, 1973, met its contract obligations in respect of progress payments to its subcontractor South Texas; whether, if not, its failure to pay was a material breach of the contract; whether South Texas was justified in abandoning the job and halting its services on June 18, 1973; and whether South Texas could properly recover on a quantum meruit basis for the labor and materials supplied to June 18, 1973.

The District Court did not make any finding as to the amount due under the contract from Piedra to South Texas on June 18, 1973. Nor did the District Court make any conclusion of law whether there had been a material breach of contract by Piedra on June 18, 1973. The District Court did, however, find an *admission* by Piedra that $75,219 was due to South Texas on that date, which amount had not been paid by Piedra. This finding of such an admission was clearly erroneous and the conclusions of the District Court based on such error cannot stand. In consequence, we are required to vacate the judgment below and remand for further findings of fact and conclusions of law consistent with this opinion. The District Court may in this respect be required to receive further evidence.

1.

The action arises under 40 U.S.C. §§ 270a and 270b, the principal parts of what is commonly known as the "Miller Act".

The Miller Act provides that before any contract, exceeding $2,000 in amount, for the construction, alteration or repair of any public building or public work of the United States is awarded to a "contractor", the contractor must furnish to the United States a performance bond for the protection of the United States and a payment bond for the protection of all persons supplying labor and material either directly to the contractor or to a subcontractor for the

---

* Senior District Judge of the Southern District of New York, sitting by designation.

work provided in the contract. 40 U.S.C. § 270a(a). Any person who has furnished labor and material under such a contract and who has not been paid has the right to sue on the payment bond furnished by the contractor. 40 U.S.C. § 270b(a). Every such suit is to be "brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed, and not else-where, irrespective of the amount in contro-versy in such suit . . .". 40 U.S.C. § 270b(b).

### 2.

Piedra entered into three contracts with the United States for the construction of improvements in the officers quarters, din-ing hall, and airmen's dormitory at Elling-ton Air Force Base in Houston, Texas. Safe-co acted as surety on the performance and payment bonds required by the Miller Act.

On April 13, 1972, Piedra entered into a contract with South Texas for material and labor as the electrical subcontractor on all three contracts awarded to Piedra. The contract price was $86,147 (later increased to $87,093). Article 3 of the contract be-tween Piedra and South Texas provided that "the Contractor shall pay the Subcon-tractor 90% of all work completed every thirty (30) days on or before the 15th of month due. Final payment due to the Sub-contractor shall be paid thirty (30) days after job completed." There were no other provisions in the contract dealing with progress payments. The contract also re-quired that South Texas would furnish Pie-dra a performance and payment bond. American Indemnity Company ("Ameri-can") was the surety on this bond.

South Texas began work in approximate-ly June of 1972. Through February 13, 1973, South Texas submitted six statements of the amount due on the date of each statement (called an "invoice"). The invoic-es were dated July 14, 1972; October 15, 1972; November 15, 1972; December 15, 1972; January 15, 1973; and February 13,

1973. Presumably the invoices were sub-mitted on or shortly after their dates. The invoices ranged from about $4,000 to about $7,500. Piedra paid these bills, usually shortly before the 15th of the month follow-ing the month in which the invoice was submitted.

According to the trial testimony of its president, South Texas made up each in-voice by using its "gross labor" and its "gross material" and then added 22% of those costs. That amount, including the 22% mark up, was deemed by South Texas the "work completed", and 90% of that amount was billed. (SM 31). Piedra appar-ently paid the invoices without questioning the manner of computation.

The bill submitted by South Texas and dated March 13, 1973, had a significant increase in amount. Though earlier bills had not exceeded $7,500, the March bill was for $16,499.16. Piedra paid the bill, appar-ently without question, on April 24, 1973.

The bill submitted by South Texas and dated April 16, 1973 was for $16,895.50. This bill, too, was computed on the same basis as the earlier ones. The invoice was due May 15. Piedra did not pay the bill.

South Texas submitted another bill dated May 15, 1973. The amount of the bill, computed in the same manner, was $8,795.33. Piedra did not pay this bill, which was due June 15, 1973.

As of June 15, 1973, therefore, South Texas had submitted two invoices, totalling more than $25,600, for which it had not been paid. South Texas was apparently in financial difficulty at the time; it was hav-ing trouble in making payments to its own suppliers. Piedra had already, before June 15, 1973, paid over $7,000 directly to two of South Texas' suppliers—Aucoin Electric Supply Company and Pepco.

Based on the failure of payment by Pie-dra, South Texas stopped work and left the job. This was on or shortly after June 15, 1973; according to some testimony, it was on June 16, a Saturday (SM 134); according to other testimony, it was on June 18, a Monday (SM 45). The District Court found

as a fact that South Texas left the job on June 18, 1973, (Appendix p. 7) and this finding is not clearly erroneous.

The final invoice of South Texas is dated June 16, 1973 and is for a net amount of $19,314.81.

This action was commenced on October 12, 1973 by Aucoin Electric Company ("Aucoin"), one of South Texas' suppliers, against Piedra as principal and Safeco as surety on Piedra's payment bonds to recover the balance claimed by Aucoin to be due to it from South Texas for electrical materials furnished to South Texas and incorporated by South Texas into the work performed for Piedra. Piedra and Safeco then brought South Texas and its surety, American, into the action as third party defendants and sought recovery over against them for any amounts Aucoin might recover from Piedra and Safeco. The third party complaint also asserted a claim against South Texas for alleged breach of contract by South Texas in abandoning the job.

Responding to the third party complaint, South Texas asserted a counterclaim against Piedra and Safeco on Piedra's payment bonds. The counterclaim was for the alleged difference between the reasonable value of the labor and materials supplied by South Texas and the payments made by Piedra to South Texas.

Responding to the third party complaint, American asserted a cross claim against South Texas and also a claim against C. F. McDowell, the president of South Texas. This cross claim and claim was for indemnification and for counsel fees.

On June 18, 1975, the District Court granted a motion by Aucoin for judgment on the pleadings against Piedra and Safeco and entered judgment on the pleadings and stipulations in favor of Aucoin and against Piedra and Safeco for $16,337.36.

There was thereafter a trial on November 13, 1975, to the District Court, without a jury, of the claims of Piedra and Safeco against South Texas; of the counterclaim by South Texas against Piedra and Safeco; of the cross-claim of American against South Texas; and of the claim of American against C. F. McDowell.

During the trial and on November 13, 1975, the District Court delivered an interim opinion that there had not been substantial performance of the contract by South Texas in June 1973 when it walked off the job; that "*by the admission of the Defendant, or Piedra*" (SM 187; ·emphasis supplied; in context the reference is clearly to Piedra). South Texas was entitled to be paid $75,219 in June, 1973; that failure of Piedra to pay this amount in June 1973 justified South Texas in abandoning the job; and that having done so, South Texas could recover on a quantum meruit basis (as opposed to the contract basis) for the reasonable value of the labor and materials it supplied.

To our amazement, this interim opinion with its findings, crucial to the judgment below, is not included in the transcript of testimony printed in the Appendix. The omitted portion (SM 186–7) is as follows:

"THE COURT:

There are a lot of figures floating around in this matter. And, a lot of different interpretations I think you can place upon them. The Court is of the opinion that there has not been substantial performance of the contract and by the admission of the Defendant, or Piedra, South Texas was entitled to ninety-five percent in June of the work that had been accomplished by him, or, as I understood the testimony, seventy-five thousand two hundred and nineteen dollars. If he had been paid all of the work that he was entitled to be paid up until that period of time, that at the very best, his inability, if that be the case, to pay his own bills, could have amounted to no more than twenty-four thousand, which would have been the eighty thousand dollars for the poles and the other work that went into that or the seven thousand, close to eight thousand, whatever the figure was, whatever the two figures came to that the testimony shows and the sixteen thousand that was paid to Aucoin and who is to say that if he had been

paid, that which he agreed, he couldn't have paid those himself. I don't know. I just think that the evidence in this case justifies this Court in finding that the manner in which the accounting was handled was a productive price of a breach in the contract and the Court is of the opinion that the contractor, sub-contractor would be entitled to prove the value of their services on quantum meruit basis and he may proceed to do so."

The rest of the trial was devoted to proof of the quantum meruit value of the performance by South Texas up to June 18, 1973, and to the value of the services of the attorneys for South Texas and for American.

The trial concluded on the same day it began and at its conclusion the Court announced the findings and conclusions made.

The Court found that the total estimated value of the performance of South Texas was $102,597.11 (SM 210); that against this value Piedra should be given credit for its progress payments to South Texas, for the payments before June 15, 1973, by Piedra directly to Aucoin and Pepco as noted above, and for the payment to Aucoin of the judgment awarded to Aucoin after the action was commenced (SM 210–211); that after allowance of these credits, the gross difference should not be awarded to South Texas but there should be a "reduction" to $19,500 by reason of labor charges which were not correct (SM 211); that Piedra should pay attorneys fees of $4,968.33 to South Texas (SM 211–212); and that South Texas and McDowell should pay $4,569.03 to American for counsel fees (SM 211–212; the Court inadvertently referred to Piedra as the indebted party). The Court then directed counsel for South Texas to submit a judgment "with findings of fact and conclusions of law sufficient to sustain the position on appeal if you care." (SM 212). Apparently this was done and the Court signed that which was submitted.

### 3.

The District Court filed on December 10, 1975 a document "Findings of Fact and Conclusions of Law" (Appendix, pp. 4–10).

Among other things, it was found that monthly payments were required to be made by Piedra to South Texas "based on 90% of all work completed"; that the monthly payments were to be made "on the 15th of the month following the billing"; that Piedra made all payments as agreed through the March 15, 1973, billing; that Piedra made no further payments through June 18, 1973, when South Texas "abandoned the job"; that on June 18, 1973, South Texas had not substantially completed the contract; that the reasonable value of the material and labor furnished by South Texas to Piedra was $94,404.37; that after credits to Piedra for payments to South Texas made directly or indirectly by Piedra, South Texas was entitled to recover the further sum of $19,500 from Piedra; that the attorney for South Texas was entitled to recover counsel fees of $4,968.33 from Piedra; and that the attorney for American was entitled to recover counsel fees of $4,569.30 from South Texas and C. F. McDowell.

The District Court did not find how much of the work had been "completed" by South Texas on June 18, 1973; nor how much was due under the contract from Piedra on that date; nor whether any failure of Piedra to pay any sum by that date was a material breach of the contract.

The District Court concluded, among other things, that South Texas was justified in abandoning the job because of failure of Piedra "to make monthly payments as agreed"; and that because South Texas was justified in abandoning the job, it could recover on a quantum meruit basis.

Judgment was entered on December 10, 1975, in favor of South Texas against Piedra and Safeco for $19,500; in favor of South Texas against Piedra for counsel fees in the further sum of $4,968.33 and in favor of American against South Texas and C. F. McDowell for counsel fees in the sum of $4,569.30.

This appeal followed.

### 4.

As already noted, the District Court found that Piedra admitted to an entitlement of South Texas to be paid $75,219 in June 1973 (SM 187). Since Piedra had not paid $75,219 to South Texas by June 18, 1973, the District Court found that this was "a productive price of a breach in the contract" (SM 187), that South Texas was thus entitled to abandon the job, and that South Texas could recover on a quantum meruit basis.

The error of the District Court was that Piedra made no such admission as that on which the decision below was rested. What Piedra admitted (through Hill, its "senior man" on the job (SM 104)) was that by the middle of June, 1973, South Texas had completed "ninety or ninety-five" percent of the work (SM 137), that South Texas was entitled to bill at that time for $75,219, *but that such amount would not be due until a month later, in the middle of July 1973.*

This admission appears in the following testimony of Hill (SM 135–138) a mistaken impression of which must have led to the District Court's error:

"Q  At that time, how much had he billed?

A  Well, we had the May billing. I don't know if we had the June 15 billing or not. It was eighty-five thousand, I guess.

Q  By any stretch of your imagination, was he entitled on May 15 or by the May 15 pay estimate, was he entitled to eighty-five thousand dollars?

A  No, it was impossible. He wasn't that far along on the job.

THE COURT:

How far along do you estimate he was, at that time?

A  Well, I estimated sixty-five thousand. That would be—

THE COURT:

That was in June?

A  That was on May 15 and *that would be due June 15.*

THE COURT:

I thought you were asking him about the conversation in June?

A  Oh, in June. I am sorry. *In June, I estimated seventy-five thousand two hundred and nineteen.*

MR. GIBSON:

Of course, that had not been billed, yet?

A  Well, it was dated June 15, I believe. I didn't have it. I didn't know what it was.

Q  Your conversation was prior to that?

THE COURT:

Seventy-five thousand includes or does not include the retainage?

A  That was with the retainage out of it, Judge.

THE COURT:

That would have been the additional seventy-five thousand or eighty-two and that would be about ninety-five percent complete?

A  That would be about right, ninety or ninety-five. He was almost complete.

MR. GIBSON:

Can you give us the rough estimate of the middle of May what percentage you think it was complete?

A  Well, sixty-five thousand nine hundred and forty-eight is what I thought.

Q  All right. And, percentage-wise, that would be what?

A  About what?

Q  Seventy-five?

THE COURT:

And, as of that time, you had paid him fifty-odd thousand dollars plus what you had advanced the suppliers which totals what?

A  Fifty-eight thousand. See, that money wasn't due until June.

MR. GIBSON:

See, *there is a thirty day lapse.*

THE COURT:

*I understand that,* but you never did pay him over fifty thousand dollars, did you?

MR. GIBSON:

Yes, sir. We paid out fifty-eight thousand six hundred and twenty-three.

THE COURT:

Direct to South Texas?

A Some of it was duplicate or joint checks.

THE COURT:

I understand that. You paid him a little over fifty and, for his account, an additional eight?

A Right.

THE COURT:

By your own estimates, he was due sixty-five in May?

A That is right. That was due in June.

MR. GIBSON:

No, sir. That wouldn't be due until June 15.

THE COURT:

For work completed in May, you felt he would be entitled to sixty-five whenever that was due to be paid?

A Yes."

(emphasis supplied)

It is perfectly clear on the record that if South Texas was entitled to bill $75,219 in the middle of June, 1973, such amount would not be due until the middle of *July*. Indeed, the District Court specifically (and correctly) found (Appendix pp. 6–7): "Payment was to be made on the 15th day of the month following the billing."

What Piedra admitted was thus that South Texas could have properly billed for $75,219 in the middle of June, 1973. This admission, however, was totally irrelevant in determining whether South Texas was justified in abandoning the job on *June* 18, 1973. The $75,219 would not, under the contract, have been *due* until *July* 15, 1973.

The District Court made no finding as to what amount was in fact due from Piedra on June 18, 1973, and its reliance on an admission believed to have been made by Piedra that $75,219 was due on June 18, 1973 was clearly erroneous. The judgment below must be vacated and the cause remanded.

### 5.

■ On remand, the District Court should determine not only what amount was due from Piedra on June 18, 1973, and

what amount had been paid by Piedra, but should make a conclusion of law whether any deficiency in the amount paid by Piedra was a material breach of the contract. In this aspect, Texas law would be applicable. The issue does not involve any construction of the Miller Act, to which federal law would apply, but involves performance in Texas of a contract made in Texas. See, for example, *United States v. Citizens & Southern Nat. Bank, etc.,* 367 F.2d 473, 477 (4th Cir. 1966).

■ In determining whether failure to make a progress payment is a material breach, South Texas appears to argue (Brief, pp. 11, 12) that any deficiency is a material breach, whatever be the amount of the deficiency. If this be the argument, we cannot accept it. This Court said some years ago, with reference to a Texas contract: "Even when payment is not made when due, it is not sufficient reason to stop work unless it really prevents work." *Knutson v. Metallic Slab Form Co.,* 128 F.2d 408, 411 (5th Cir. 1942). We believe that the amount of the deficiency is one of the several factors to be considered in context to determine whether there was a material breach of the contract.

### 6.

The District Court found that South Texas had not substantially completed the contract (Finding of Fact 7), even though it had been stated in the interim findings (SM 187) that Piedra had admitted that South Texas had completed 95% of the contract when it abandoned the job. While it seems open to question that 95% completion is not substantial performance, recovery on a quantum meruit basis would be appropriate if it be found on remand that Piedra did in fact commit a material breach of contract, that is, a breach which prevented South Texas from completing the contract.

Whether performance was substantial or not is ordinarily significant because of the rule that if a contract has been fully or substantially completed, recovery may be had only for the contract price. 5 Corbin

on Contracts, § 1110 (1964); *Ditmar v. Beckham,* 86 S.W.2d 801 (Tex.Civ.App. 1935). If the contract has been only partially completed, recovery may be had either on the contract or for the value of the services rendered. *Coon v. Schoeneman,* 476 S.W.2d 439 (Tex.Civ.App.1972). However, "in cases where plaintiff's complete performance has been prevented by defendant's breach . . . plaintiff may elect either to recover his damages under the contract or treat the contract as rescinded and recover the reasonable value of his work in *quantum meruit.*" *Coon v. Schoeneman,* cited above at 442; *Tower Contracting Co. v. Flores,* 294 S.W.2d 266 (Tex.Civ.App.1956).

██ Thus, whether or not the contract with Piedra had been substantially performed, if South Texas was prevented from completing performance by Piedra's failure to make progress payments (see *Live Oak Dairy Corp. v. Kaase,* 45 S.W.2d 657 (Tex. Civ.App.1921)), then recovery may be had on a quantum meruit basis.

The judgment below is VACATED and REMANDED.