**GRANITE COMPUTER LEASING CORP., Plaintiff,**

v.

**The TRAVELERS INDEMNITY COMPANY, Defendant.**

**No. 81 CIV. 7705 (CBM).**

United States District Court,
S.D. New York.

March 20, 1984.

Sage, Gray, Todd & Sims, New York City, for plaintiff; William Allingham, Steven Bernstein, New York City, of counsel.

Hynes, Diamond & Reidy by James Reidy, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, Chief Judge.

This case arose because of problems associated with a construction contract at United States Air Force bases. Plaintiff Granite Computer Leasing (Granite) has sued defendant The Travelers' Indemnity Company (Travelers) in diversity for costs incurred by Granite's assignor in financing part of the project. This case is before the court upon cross-motions for summary judgment. Both parties have moved in the alternative, Travelers for a stay pending compliance with a previous court order, and Granite for dismissal of affirmative defenses as well as for leave to amend its complaint.

On September 28, 1983, the court issued an order granting Travelers' motion for summary judgment dismissing the complaint. This opinion sets forth the reasons for the court's decision. Accordingly, the opinion does not address the alternative relief requested by the parties.

*Background*

Despite the attenuated nature of their relationship, the parties seem willing to concede the simplicity of the facts before the court.[1] Granite is the second assignee of a general contractor (the contractor or CST) which contracted with the Army Corps of Engineers to build modular housing at seven Air Force bases. In connection with that project the contractor entered into a supply contract with National Modular Systems (NMS or the principal). Specifically, NMS contracted to manufacture prefabricated housing for three of the seven sites. Travelers issued a surety bond to NMS.

NMS commenced performance of the supply contract in April 1973. Almost from the beginning, the project encountered difficulty. Design modifications re-

---

1. Plaintiff's Reply Memorandum, at 1. Affidavit of James H. Reidy, at 2. That both sides moved for summary judgment suggests essential agreement on the facts of this case.

quested by the Corps of Engineers repeatedly delayed performance by the subcontractors. By April 1973, the project had fallen approximately 270 days behind schedule.[2] Moreover, CST's progress payments to NMS were also behind schedule.[3] In May 1974, NMS told CST that the increased costs incurred as a result of delays occasioned by modifications would necessitate additional financing. Without such financing, NMS warned.that it would have to cease performance. On June 21, NMS actually did close its factory. One week later, CST sent NMS notice to cure this nonperformance pursuant to the terms of the supply contract which gave NMS 15 days to cure or be defaulted.[4] In an attempt to break this impasse, NMS and CST asked Travelers to finance NMS. Travelers refused to do so.[5] CST and NMS subsequently entered into a financing agreement whereby CST financed NMS's continued operation and withdrew the notice to cure. The financing agreement was dated July 8.[6]

NMS thereafter completed performance of the supply contract. The project was completed in July 1976, over two years behind schedule. In May 1978, NMS dissolved its corporate existence.

Granite sued Travelers to recover the costs resulting from CST's financing agreement with NMS. Granite contends that Travelers, as the surety for NMS, was under an obligation to finance NMS should such financing become necessary. Travelers denies that any liability ever attached from the surety bond.

*Discussion*

█ Summary judgment may be rendered in favor of a party only upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Adickes v. S.H. Kress and Company,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). The burden of proving the absence of a material issue of fact rests with the movant. *See, e.g., Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444 (2d Cir.1980). However, if the party opposing the motion "fails to substantiate the existence of a genuine dispute, a proper concern for judicial efficiency and the mandate of Rule 56(c) require summary disposition of the issue." *Schering Corporation v. Home Insurance Company,* 712 F.2d 4, 9 (2d Cir.1983). In this case, the court finds that Granite has not substantiated the existence of any genuine dispute as to the threshold issue of whether NMS was ever in default.

█ It is well settled that a surety's obligations are limited to those it undertakes in its bond. *See, e.g., Estate of Camarda,* 103 Misc.2d 362, 364, 425 N.Y.S.2d 1012, 1015 (1980); *Robbins v. Melbrook Realty Co.,* 28 Misc.2d 1076, 1079, 213 N.Y.S.2d 403, 407 (1961). Travelers' bond incorporated the supply contract by reference, and provided:

> if the Principal [NMS] shall indemnify the obligee [contractor] against any loss or damage directly arising by reason of the failure of the Principal [NMS] to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect.[7]

In short, the bond guaranteed only performance by NMS of the supply contract.

2. Defendant's Exhibit JJJ.

3. *Id.;* Defendant's Exhibit RRR.

4. Defendant's Exhibit V: *see also* Defendant's Exhibit K, at 10.

5. As Granite conceded, Travelers never formally notified the contractor that Travelers would not honor the surety bond. Tr., at 48. This absence of formal repudiation distinguishes this case from the case of *Knutson v. Metallic Slab Form Co.,* 128 F.2d 408 (5th Cir.1942), cited by Granite. In *Knutson,* the surety repudiated in writing its obligations under the surety bond. The ground for repudiation was an alleged violation by the general contractor of a subcontract. Here, Travelers orally told the contractor it would not act on the bond because of the absence of default. Tr., at 6.

6. Defendant's Exhibits W and W–1.

7. Defendant's Exhibit L ("Supply Contract Bond").

The language of the bond does not support a finding that Travelers guaranteed both performance and payment for all bills incurred in performance. *See Novak & Co., Inc. v. The Travelers Indemnity Company*, 85 Misc.2d 957, 959, 381 N.Y.S.2d 646, 649 (1976), *aff'd* 56 A.D.2d 418, 392 N.Y.S.2d 901 (1977) (distinguishing performance bond from payment bond); 10 W. Jaeger, Williston on Contracts § 1211B (3d ed. 1967). Therefore, Travelers was under no obligation to perform on the bond unless NMS defaulted on its performance.

■ It is beyond dispute that no default occurred in this case. There has been no suggestion that NMS failed to make timely delivery of the modules. Moreover, no modules were to be delivered during the period when NMS's plant was closed. It is true that NMS's threatened abandonment made it likely that Travelers would have to intervene; the likelihood of intervention increased when NMS closed its factory on June 21. Even so, under the terms of the supply contract, no default ever occurred.

As indicated above, the supply contract provided for default only after failure to cure a breach within fifteen days of receiving notice of the breach from the contractor. In accordance with this requirement, CST sent NMS a notice to cure on June 28. However, the contracting parties subsequently arranged for CST itself to provide NMS with financial assistance. As part of the financing agreement, CST withdrew the notice to cure. Therefore, no default had occurred and Travelers was under no obligation on its surety bond.

At the hearing on this motion, Granite suggested that the financing agreement was actually signed on July 23 and backdated to July 8.[8] Granite, then, maintains that NMS did default on the contract. By backdating the agreement to July 8, it appears that the parties sought to eliminate any question of default. Additional support for this position comes from Travelers' assurance on July 24 that the financing agreement would not affect its obligations as surety.[9] *Cf. Empire National Bank v. United Penn Bank*, 81 A.D.2d 904, 439 N.Y.S.2d 203, 204 (2d Dep't 1981) (finding waiver of thirty day limitation period for reaching agreement because of "continuing efforts" to reach agreement "well after" expiration of the period). In any event, the notice to cure, a prerequisite for default under the supply contract, was expressly withdrawn.[10]

■ Granite contends that NMS's conduct amounted to anticipatory repudiation of the contract between NMS and CST. Granite further contends that CST materially changed its position by arranging additional financing for NMS. According to Granite, NMS and its surety, Travelers, are liable for the costs incurred in financing the project. Even if the court accepts Granite's argument that CST materially changed its position by financing NMS, Travelers is not liable under the surety bond since only default would trigger liability.

Finally, Granite argues that case law supports requiring a surety to finance a failing principal. Granite cites *Birnant v. Aetna Casualty & Surety Co.*, 28 A.D.2d 978, 283 N.Y.S.2d 393 (1st Dep't 1967) and *Comey v. United Surety Co.*, 217 N.Y. 268, 111 N.E. 832 (1916). Both cases establish that a surety may be held liable for the additional costs of completion when its principal defaults. The absence of a default in this case distinguishes it from the *Birnant* and *Comey* cases. In *Knutson v. Metallic Slab Form Co.*, 128 F.2d 408 (5th Cir.1942), the court held a surety liable after the surety's repudiation of its obligations and the principal's subsequent default. Given neither formal repudiation nor default, the court cannot look to *Knutson* for guidance. Taken together, the case law cited by Granite does not command summary judgment in its favor precisely because of the absence of default. Even given a default, however, the court

**8.** Defendant's Exhibit Y.

**9.** Defendant's Exhibit Z.

**10.** Defendant's Exhibit W at 7.

accepts Travelers' contention that a triable issue of fact would exist as to whether default was justifiable. Therefore, Granite's cross-motion for summary judgment must be denied regardless of the court's decision with respect to Travelers' motion for summary judgment.

*Conclusion*

For the reasons stated above, the court grants Travelers' motion for summary judgment and denies Granite's cross-motion for summary judgment. This case is dismissed.